2014 COA 58

**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

**v.**

**Jordan Paul STROUD, Defendant–Appellant.**

**Court of Appeals No. 10CA0414**

Colorado Court of Appeals,
Div. I.

Announced May 8, 2014

John W. Suthers, Attorney General, Erin K. Grundy, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee

Douglas K. Wilson, Colorado State Public Defender, Britta Kruse, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant

Opinion by JUDGE TAUBMAN

¶ 1 Defendant, Jordan Paul Stroud, appeals the trial court's judgment of conviction entered on jury verdicts finding him guilty of two counts of child abuse resulting in serious bodily injury and two counts of child abuse resulting in bodily injury. We affirm.

## I. Background

¶ 2 This appeal arises from allegations of child abuse concerning Stroud's eleven-week-old daughter, R.S., and his stepchildren, C.H. and S.H. In 2007, the biological father of C.H. and S.H. took his children to the hospital on two occasions after he noticed injuries on their bodies which included rashes, bruises, and a swollen contusion on the head of one child. A year later, R.S. was admitted to the hospital after she was discovered with injuries that resulted in bleeding on both sides of her brain and in the back of her eye, a twisting fracture to her arm, and three rib fractures. At the time of the children's alleged injuries, Stroud shared caretaking responsibility with his common-law wife, N.D., and her ex-husband C.H.

¶ 3 Because these injuries arose during Stroud's supervision of the children, the prosecution charged him with two counts of child abuse resulting in serious bodily injury and two counts of child abuse resulting in bodily injury. The jury convicted him as charged, and the trial court imposed two concurrent twenty-four-month jail sentences for his misdemeanor convictions, and two concurrent sixteen-year prison sentences for his felony convictions, which the court ordered to be served consecutively to the misdemeanor jail sentences.

## II. Denial of Funds for Defense Expert

¶ 4 Stroud contends that the trial court abused its discretion when it denied his motion for funds to hire an expert even though he was indigent and represented pro bono by a private attorney. We agree that the trial court abused its discretion, but conclude the error was harmless beyond a reasonable doubt.

### A. Standard of Review

¶ 5 Although an indigent defendant is entitled to the basic tools of an adequate defense, a trial court has discretion to grant a motion for support services to a defendant. *People v. Orozco*, 210 P.3d 472, 475 (Colo. App.2009); *see also People v. Tafoya*, 703 P.2d 663, 667 (Colo.App.1985) (quoting *Britt v. North Carolina*, 404 U.S. 226, 227, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971)). A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or based on an erroneous understanding or application of the law. *Orozco*, 210 P.3d at 475; *see also People v. Muniz*, 190 P.3d 774, 781 (Colo. App.2008). As relevant here, a trial court erroneously denies a defendant's request for support services if the defendant shows that the requested services were reasonable, necessary, and helpful to the defense. *Orozco*, 210 P.3d at 475.

¶ 6 Because a court's erroneous denial of a defendant's request for support services is subject to constitutional harmless error review, we reverse a defendant's conviction unless the error is harmless beyond a reasonable doubt. *See id.* at 476. An error is not harmless beyond a reasonable doubt "[i]f there is a reasonable possibility that the defendant could have been prejudiced." *Id.* (quoting *People v. Trujillo,* 114 P.3d 27, 32 (Colo.App.2004)). Alternatively, an error is harmless beyond a reasonable doubt "if there is no reasonable possibility that it affected the guilty verdict." *Id.* (quoting *Arteaga-Lansaw v. People,* 159 P.3d 107, 110 (Colo. 2007)).

### B. Analysis

¶ 7 Under section 18–1–403, C.R.S.2013, "all indigent persons who are charged with or held for the commission of a crime are entitled to legal representation and supporting services at state expense, to the extent and in the manner provided for in articles 1 and 2 of title 21, C.R.S." In *People v. Cardenas,* 62 P.3d 621, 622–23 (Colo.2002), the supreme court held that section 18–1–403 required a defendant to be represented by a public defender or an alternate defense counsel if he or she wanted the state to pay the costs of his or her attorney and support services.

¶ 8 However, as of July 2008, Chief Justice Directive (CJD) 04–04 expanded the circumstances in which support services may be provided.[1] As relevant here, CJD 04–04 § IV(D)(1) allows the Judicial Department to pay for a defendant's expert witness fees if

a) The defendant is indigent and proceed[s] pro se;

b) The defendant is indigent and receive[s] pro bono, private counsel; or

c) The defendant is receiving private counsel but becomes indigent during the course of the case, and the court has determined that the defendant lacks sufficient funds to pay for court costs, and that it would be too disruptive to the proceedings to assign the Public Defender or Alternate Defense Counsel to the case.

¶ 9 In *Orozco,* a division of this court relied on the CJD to conclude that a trial court has discretion to determine whether a defendant represented by private counsel is entitled to receive support services at the state's expense. *See* 210 P.3d at 476. Thus, in applying CJD 04–04 § IV(D)(1)(c), the division held that the trial court abused its discretion in denying the defendant's request for funding to hire an expert because the defendant had become indigent during the course of his case and demonstrated that he had insufficient funds to hire an expert. *Id.*

¶ 10 Here, Stroud's attorney filed a motion for appointment of an expert witness at state expense, and the court held a hearing on this matter. In both his motion and at the hearing, defense counsel informed the court that Stroud was indigent due to his incarceration and that he was previously found indigent in two other district court cases. Defense counsel stated that when he entered his appearance, Stroud's wife had agreed to provide funding for an expert witness to review the medical evidence and to determine whether R.S.'s injuries were the result of nonaccidental trauma. However, after the couple separated, Stroud lacked funding to obtain an expert. Therefore, though defense counsel stated he was "willing to proceed with his representation of [Stroud] pro bono," he requested the court to appoint an expert witness at the state's expense to assure Stroud a fair trial.

¶ 11 Despite evidence of Stroud's indigence and the need for an expert witness, the trial court denied his motion for funding of an expert. The court explained that it lacked authority to provide state funding without an initial determination of indigence by the Public Defender's Office. Thus, the court instructed Stroud to obtain a public defender or a court-appointed counsel to receive court assistance in hiring an expert. Nevertheless, Stroud elected to proceed with his pro bono counsel and go to trial without an expert.

¶ 12 We conclude that the trial court abused its discretion in denying Stroud's motion. Although neither party brought CJD

---

1. A Chief Justice Directive is to be given full force and effect in matters of court administration. *People v. Orozco,* 210 P.3d 472, 475 (Colo. App.2009).

04–04 to the court's attention, that CJD authorized the court to provide funds for Stroud to hire an expert.

¶ 13 Here, Stroud's evidence of his indigence satisfied two of the three ways for obtaining a court-funded expert—he was indigent and represented by a private attorney who began representing him pro bono. Thus, the trial court should have provided him expert witness funding without an initial determination of indigency by the Public Defender's Office.

¶ 14 Nevertheless, the prosecution asserts that the error is harmless beyond a reasonable doubt because Stroud did not establish that an expert was necessary and there was overwhelming evidence of his guilt. We agree.

¶ 15 Here, Stroud contends that R.S.'s injuries were accidental. However, at trial, Stroud did not make an offer of proof regarding his medical expert's testimony. *Cf. Orozco,* 210 P.3d at 474 (noting that defendant presented an offer of proof concerning his expert's anticipated testimony). Therefore, any argument that a defense expert would have presented evidence of alternative causes for R.S.'s injuries is speculative.

¶ 16 Further, the prosecution presented overwhelming evidence that R.S.'s injuries were nonaccidental. Specifically, evidence of subdural hematomas, retinal hemorrhaging, an injured arm, and rib fractures provided signs of shaken baby syndrome. As pertinent here, the prosecutor's expert testified that a three-month-old baby like R.S. was unlikely to roll over on her arm and that, even if she did, such movement would not have broken her arm or fractured her ribs. In addition, the prosecutor's expert conducted blood tests to determine whether her injuries were a result of von Willebrand disease, a blood disorder that would cause a person to bleed and clot insufficiently. However, the blood tests were negative.

¶ 17 Ultimately, because the prosecution presented overwhelming evidence and eliminated alternative causes for R.S.'s injuries, Stroud has not shown that there was a reasonable possibility that he was prejudiced by the trial court's determination that he was not entitled to a court-funded expert. There-

fore, the trial court's decision was harmless beyond a reasonable doubt.

### III. Admission of Transcripts from a Prior Dependency and Neglect Case

¶ 18 Stroud next contends that the trial court erroneously admitted his testimony from his prior dependency and neglect case in violation of section 19–3–207(3), C.R.S. 2013. We disagree.

#### A. Standard of Review

¶ 19 We review questions of statutory construction de novo. *People v. Cross,* 127 P.3d 71, 73 (Colo.2006). However, we review unpreserved issues for plain error. *People v. Sharp,* 155 P.3d 577, 579 (Colo.App. 2006). Plain error is error that so undermines the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. *Id.*

#### B. Analysis

¶ 20 When reviewing issues of statutory construction, we must ascertain and effectuate the General Assembly's intent. *Cross,* 127 P.3d at 73. To discern legislative intent, we first examine the plain language of the statute, giving words and phrases effect according to their plain and ordinary meaning. *People v. Hopkins,* 2013 COA 74, ¶¶ 10–11, 328 P.3d 253. If the statutory language is clear, we need not apply other rules of statutory construction. *Id.* at ¶ 10; *see also Dubois v. People,* 211 P.3d 41, 43 (Colo.2009).

¶ 21 Additionally, we note that the General Assembly has not adopted the last antecedent rule, "which provides that in the absence of a contrary intention, referential and qualifying words or phrases refer solely to the immediately preceding clause...." *People in Interest of O.C.,* 2012 COA 161, ¶ 26, 312 P.3d 226; *see* § 2–4–214, C.R.S.2013. Therefore, this rule of statutory construction does not create any presumption of statutory intent. *People in Interest of O.C.,* ¶ 26.

¶ 22 Here, the trial court allowed the prosecution to introduce Stroud's testimony from his dependency and neglect trial at his criminal trial. During his dependency and neglect proceeding, Stroud explained that R.S. was

"scooting" on her stomach and that the friction between her body and the rug could have caused the burns on her toes and stomach. He also stated that the right side of R.S.'s head hit the door when he tripped over his dog while holding her. Nevertheless, he testified that he could not otherwise explain the causes for R.S.'s injuries.

¶ 23 At the criminal trial, the prosecution sought to introduce these statements as admissions by a party-opponent under CRE 801(d)(2). Defense counsel did not object, and the trial court admitted Stroud's testimony from his dependency and neglect proceeding.

■ ¶ 24 On appeal, Stroud contends that section 19–3–207(3) bars the admissibility of his statements from his prior dependency and neglect case. That statute provides that "no admission by a respondent in open court or by written pleading filed with the court to a petition in dependency or neglect may be used against him or her in any criminal prosecution, except for purposes of impeachment or rebuttal." *Id.* According to Stroud, the term "admission" under section 19–3–207(3) includes a respondent parent's statements at a contested hearing. Therefore, he contends the trial court should have excluded his prior testimony. We disagree.

¶ 25 As an initial matter, because the General Assembly has not adopted the last antecedent rule, we cannot conclude that the General Assembly intended the word "admission" in section 19–3–207(3) to refer only to those made by a respondent in open court. *See People in Interest of O.C.,* ¶ 26. Therefore, absent contrary intent, the words "admission to a petition in a dependency or neglect" case could refer to those made by a respondent in open court and by a written pleading filed with the court.

¶ 26 While there is no Colorado case directly on point, we conclude, based on a plain reading of section 19–3–207(3), that the General Assembly intended to exclude only a respondent parent's formal admission to the allegations of a petition. Our interpretation is consistent with related statutes that set forth a respondent parent's right to admit or deny allegations of a dependency and neglect petition.

■ ¶ 27 As relevant here, to initiate a dependency and neglect proceeding, a county attorney must file a petition setting forth the factual allegations that bring a child within the jurisdiction of the court. *See* § 19–3–502(2), C.R.S.2013; C.R.J.P. 4(a). After the filing of a petition, the respondent parent must be fully advised and then shall admit or deny the allegations of the petition orally in open court. C.R.J.P. 4.2(b); *see also People in Interest of N.D.V.,* 224 P.3d 410, 415 (Colo. App.2009) ("The parent may either deny the facts alleged in the petition and require the county department of social services to prove the child is neglected or dependent, or waive proof of facts and admit the petition."). In some circumstances, a nonappearing respondent may also admit to the petition in writing. *See* § C.R.J.P. 4.2(d) ("[T]he court may advise a non-appearing respondent(s) pursuant to this Rule in writing and may accept a written admission to the petition if the respondent has affirmed under oath that the respondent(s) understands the advisement and the consequences of the admission, and if, based upon such sworn statement, the court is able to make the findings set forth in part (c) of this Rule."). Thus, for purposes of a dependency and neglect case, we conclude that an "admission" under section 19–3–207(3) only refers to a parent's formal admission or denial of the allegations in a petition.

¶ 28 Therefore, we conclude that in a subsequent criminal case, a trial court may admit statements—i.e., testimony—made during a contested dependency and neglect adjudicatory or termination of parental rights hearing.

¶ 29 Further, the General Assembly's use of the word "statements" in section 19–3–207(2) bars the admission of a respondent parent's statements to a professional without the parent's consent. *See People v. Gabriesheski,* 262 P.3d 653, 660 (Colo.2011). Thus, the General Assembly's use of the word "statement" in section 19–3–207(2) contrasts with its use of "admission" in section 19–3–207(3), indicating that the legislature intended to allow statements made during a contested dependency and neglect hearing to be admitted in a subsequent criminal case, because such statements are not admissions under section 19–3–207(3).

¶ 30 In addition, the explanation in CRE 801(a) that the word "statement" includes admissions demonstrates that the legislature could have specified that a respondent parent's in-court statements are admissions under section 19–3–207(3). Instead, the legislature used "statement" in section 19–3–207(2) and "admission" in section 19–3–207(3). *See People v. J.J.H.*, 17 P.3d 159, 162 (Colo.2001) ("Courts should not presume that the legislature used language 'idly and with no intent that meaning should be given to its language.'" (quoting *McMillin v. State*, 158 Colo. 183, 188, 405 P.2d 672, 674 (1965))); *see also People v. Torrez*, 2013 COA 37, ¶ 67, 316 P.3d 25 ("We presume that the legislature chooses its words carefully.").

¶ 31 Moreover, CRE 801(d)(2) provides that a statement is not hearsay if "[t]he statement is offered against a party and is ... the party's own statement[.]" Thus, we agree with the People that a statement by a defendant may be an admission under the rules of evidence, but that a statement during a contested dependency and neglect proceeding is not an admission to a dependency and neglect petition under section 19–3–207(3).

¶ 32 Last, Stroud contends that the trial court's admission of his statements constituted plain error because it violated his Fifth Amendment privilege against self-incrimination. We disagree.

¶ 33 Plain error is error that is so clear, obvious, and substantial that it "undermine[s] the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." *People v. Osorio–Bahena*, 2013 COA 55, ¶ 69, 312 P.3d 247. For an error to be obvious, "the action challenged on appeal must contravene (1) a clear statutory command; (2) a well-settled legal principle; or (3) Colorado case law." *People v. Pollard*, 2013 COA 31, ¶ 40, 307 P.3d 1124 (citations omitted). However, where there is no case law or statute concerning a trial court's alleged error, we cannot conclude that the trial court's decision constituted plain error because the error would not have been obvious. *People v. O'Connell*, 134 P.3d 460, 464 (Colo.App.2005) ("If the district judge would have had to be clairvoyant to detect the error (perhaps by foreseeing yet undecided court of appeals or Supreme Court case

law) the error is not plain and defendant must object as a condition for having it considered on appeal." (quoting *United States v. Turman*, 122 F.3d 1167, 1171 (9th Cir. 1997))). In other words, where an alleged error is unclear under present law, the trial court does not commit plain error. *See United States v. Whab*, 355 F.3d 155, 158 (2d Cir.2004) (absent binding precedent from the Supreme Court or the Second Circuit, the trial court did not commit plain error); *see also O'Connell*, 134 P.3d at 464 ("'At a minimum, [the] court of appeals cannot correct an error pursuant to Rule 52(b) unless the error is clear under current law.'" (citing Fed. R.Crim.P. 52(b) as applied to Colo.Crim. P. 52(b) and quoting *United States v. Olano*, 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993))).

¶ 34 Thus, we conclude that the trial court properly admitted Stroud's testimony from his contested dependency and neglect case in this criminal case, and therefore, it did not commit error, much less plain error.

## IV.   Conflict of Interest

¶ 35 Next, Stroud argues that we should reverse his convictions for child abuse because his trial counsel labored under an actual conflict of interest that denied him effective assistance of counsel. We disagree.

¶ 36 In resolving this claim, we must first determine whether defense counsel's representation of Stroud without an expert witness constituted an actual conflict of interest, and second, if such conflict existed, whether Stroud waived his right to conflict-free representation.

### A.   Standard of Review

¶ 37 Where a defendant does not preserve a conflict of interest claim, we may not reverse the defendant's conviction unless he or she can show that trial counsel's representation constituted an actual conflict of interest that adversely affected the counsel's performance. *See Mickens v. Taylor*, 535 U.S. 162, 172–75, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002) (holding that where the defendant does not raise a conflict of interest claim at trial, on appeal, defendant must establish that an actual conflict of interest existed

which adversely affected counsel's representation); *Cuyler v. Sullivan*, 446 U.S. 335, 350, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980) (holding that, absent objection, a defendant must demonstrate that a conflict of interest actually affected lawyer's representation); *People v. Delgadillo*, 2012 COA 33, ¶ 26, 275 P.3d 772 (same); *People v. Ragusa*, 220 P.3d 1002, 1006 (Colo.App.2009) (same).

## B. Analysis

¶ 38 The United States and Colorado Constitutions guarantee a defendant the right to conflict-free representation. U.S. Const. amend. VI; Colo. Const. art. II, § 16; *People v. Harlan*, 54 P.3d 871, 878 (Colo. 2002); *Delgadillo*, ¶ 8. A conflict of interest exists when an attorney's ability to represent a client is materially limited by the attorney's own interests. Colo. RPC 1.7(b); *Delgadillo*, ¶ 9. Specifically, in this situation, the attorney's "ability to champion the cause of [his or her] client becomes substantially impaired." *Rodriguez v. Dist. Court*, 719 P.2d 699, 704 (Colo.1986); *see* Colo. RPC 1.7, cmt. 8 ("The critical questions are the likelihood that a difference in interests will eventuate and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client.").

¶ 39 There are two types of conflict: (1) actual and (2) potential. *Delgadillo*, ¶ 10. "An actual conflict of interest is one that is real and substantial, whereas a potential conflict is one that is possible or nascent, but in all probability will arise." *Id.* As noted above, to obtain a reversal for plain error, a defendant must establish that his or her counsel's representation constituted an actual conflict of interest and that it adversely affected his or her lawyer's performance. *Ragusa*, 220 P.3d at 1006.

¶ 40 To make such a showing, the defendant "must point to specific instances in the record to suggest actual impairment of his [or her] interest." *People v. Kenny*, 30 P.3d 734, 745 (Colo.App.2000) (citing *United States v. Khoury*, 901 F.2d 948 (11th Cir. 1990)). " 'More specifically, the defendant must identify something that counsel chose to do or not do, as to which he had conflicting

duties, and must show that the course taken was influenced by that conflict.' " *Id.* (quoting *Vance v. Lehman*, 64 F.3d 119, 124 (3d Cir. 1995)).

¶ 41 Here, Stroud contends that defense counsel's representation constituted an actual conflict of interest. Initially, when Stroud's attorney filed a motion to obtain expert witness funding, he stated:

[T]o proceed with trial in this matter without an expert witness on behalf of Mr. Stroud would constitute ineffective assistance of counsel and would lead to the overturning of any negative jury verdict in this case on appeal.

¶ 42 When the trial court denied his motion to obtain expert witness funding and instructed him to obtain a public defender if he wanted the court to appoint an expert for him, Stroud had two options: (1) retain current counsel and proceed to trial without an expert witness or (2) obtain court-appointed counsel to receive expert witness funding.

¶ 43 At a later hearing, defense counsel informed the court that Stroud had chosen the first option. He said:

[Stroud] has indicated to me that he wishes for me to remain on the case even if we can't hire an expert. I know that's against my—my advice as an attorney, but he has indicated that he is not wanting to discharge me at this time.

¶ 44 However, concerned that the court's denial of expert witness funding might result in an ineffective assistance of counsel claim, defense counsel continued:

I think that puts me in a position—I think what we may have to do is put a waiver on the record of Mr. Stroud of any, you know, right or—to an expert or something along those lines, so that he, you know, obviously can't come back and argue ineffective assistance of counsel.

¶ 45 Accordingly, Stroud now contends that defense counsel's statement created an actual conflict of interest. Stroud argues that his trial counsel was actively representing his own conflicting interest in avoiding a future ineffective assistance of counsel claim instead of Stroud's fundamental constitutional interests in presenting a defense and

obtaining a fair trial. Specifically, Stroud argues that his trial counsel "may have attempted to limit his exposure to a claim of ineffective assistance by choosing not to contest the medical evidence at trial, thereby 'playing down' the need for an expert in this case." He also argues that defense counsel "may have simply been distracted at trial by the belief that he would later be found ineffective, thereby preventing him from appropriately focusing all his attention on how to provide Mr. Stroud with the best defense and representation possible." We disagree for two reasons.

¶ 46 First, because the trial court's denial of expert witness funding was harmless beyond a reasonable doubt, as discussed above, we conclude the absence of expert testimony did not undermine defense counsel's representation.

¶ 47 Second, the record refutes Stroud's assertions that his trial counsel did not vigorously contest the prosecution's evidence to avoid exposure to an ineffective assistance of counsel claim. Trial counsel provided several alternative theories for R.S.'s injuries, including R.S.'s medical history, and asserted that Stroud's wife, not Stroud, caused the injuries. During cross-examination, defense counsel noted that R.S. had a family history of von Willebrand disease, a blood disorder that would cause a person to bleed and clot insufficiently. He then asked the prosecution's expert if she had eliminated this disease as a cause of R.S.'s injuries and, if so, what methods she used to eliminate it as a factor. His cross-examination of that expert witness alone comprised approximately twenty-two pages of transcript. Thus, the record refutes Stroud's argument that his trial counsel did not vigorously contest the prosecution's evidence.

¶ 48 Accordingly, there was no actual conflict of interest that adversely affected defense counsel's performance.

## V. Consecutive Sentences

¶ 49 Last, Stroud contends that the trial court did not make specific findings of fact to justify its imposition of consecutive sentences for his misdemeanor and felony convictions, and that the trial court erroneously denied him presentence confinement credit. We disagree.

### A. Standard of Review

¶ 50 Ordinarily, we review a trial court's sentencing determination for an abuse of discretion. *People v. Chase,* 2013 COA 27, ¶ 83, —— P.3d ——. But where, as here, a defendant does not preserve this issue for review, we apply plain error. *People v. Tillery,* 231 P.3d 36, 47–48 (Colo.App. 2009).

### B. Analysis

¶ 51 Section 18–1.3–501(c), C.R.S.2013, provides that a defendant must serve his misdemeanor and felony convictions concurrently, unless if, "at the time of sentencing, the court determines, after consideration of all the relevant facts and circumstances, that a concurrent sentence is not warranted...."

¶ 52 In determining an appropriate sentencing order, the trial court must consider the following factors: (1) the nature of the offense; (2) the character and rehabilitative potential of the offender; (3) the development of respect for the law; (4) the deterrence of crime; and (5) the protection of the public. *People v. Martinez,* 179 P.3d 23, 25–26 (Colo.App.2007). "However, the trial court need not engage in a point-by-point discussion of every factor relevant to its sentencing decision. A reasonable explanation for the sentence will suffice." *Id.* at 26.

¶ 53 Here, the court ordered Stroud to serve his misdemeanor sentence in the county jail before transferring him to the Department of Corrections to serve his felony sentence. The court justified its sentencing order by considering the factors noted above, reviewing the presentence investigation report (PSIR), and referring to the trial testimony it had heard.

¶ 54 Specifically, the trial court described Stroud's acts of child abuse as "one of the most disgusting and heinous crimes [he's] ever seen" because R.S. depended on Stroud's care and protection. Additionally, the court noted Stroud's lack of rehabilitative potential based on his testimony that he did not know how R.S. sustained those injuries. The court concluded that Stroud's explanation was "incredible and remains incredible" and that he sought to "abdicate [himself]

from any responsibility." The PSIR supported the court's conclusion because it indicated that Stroud had a prior child abuse conviction. Therefore, the court adequately addressed Stroud's rehabilitative potential.

¶ 55 Further, the court indicated that Stroud regularly disrespected the law because he "consistently [appeared] before the court in situations where [he] failed to comply with either the laws of society or supervision." Last, the court discussed the deterrence of the crime and the protection of the public by stating that the "[abuse] wasn't a one-time affair, [but] it was a pattern of abuse on all of these children." Thus, the court concluded that Stroud's crime "deserve[d] severe punishment."

¶ 56 Because the court properly considered the factors noted above, we perceive no error, much less plain error. *See People v. Zadra*, 2013 COA 140, ¶ 63, ― P.3d ―. Accordingly, the trial court did not abuse its discretion in imposing consecutive sentences.

■ ¶ 57 Stroud also contends that the trial court abused its discretion in applying his 525 days of presentence confinement credit to his consecutive misdemeanor sentence instead of to his felony sentence.

■ ¶ 58 Section 18–1.3–405, C.R.S. 2013, provides that a person is entitled to a credit against the term of the sentence for the time spent in confinement for an offense committed before the actual imposition of a sentence for that offense. A court must calculate presentence confinement credit at the sentencing hearing. Additionally, the court must credit the defendant with the longer of the time served as a result of the: (1) charge for which the sentence is imposed or (2) conduct on which the charge is based. *Fields v. Suthers*, 984 P.2d 1167, 1171–72 (Colo.1999); *Schubert v. People*, 698 P.2d 788, 795 (Colo.1985).

¶ 59 Stroud argues that this statute requires the court to apply presentence confinement credit only to a sentence that is to be served in a state correctional facility. However, in *People v. Johnson*, 797 P.2d 1296, 1299 (Colo.1990), the supreme court held that where consecutive misdemeanor and felony sentences are imposed, the trial court has discretion to give credit for presentence confinement against either sentence.

¶ 60 Consequently, the court did not abuse its discretion or commit plain error in applying Stroud's credit for presentence confinement to his misdemeanor sentence.

### VI. Conclusion

The judgment is affirmed.

JUDGE FURMAN and JUDGE DUNN concur.