23CA1431 Peo v Forbes 09-11-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1431
El Paso County District Court No. 14CR2084
Honorable Marcus S. Henson, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Jason Romeo Forbes,

Defendant-Appellant.

---

ORDERS AFFIRMED

Division IV
Opinion by JUDGE GOMEZ
Freyre and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced September 11, 2025

---

Philip J. Weiser, Attorney General, Paul Koehler, Senior Counsel, Denver, Colorado, for Plaintiff-Appellee

Jason Romeo Forbes, Pro Se

¶ 1    Defendant, Jason Romeo Forbes, appeals the postconviction court's orders denying his Crim. P. 35(c) petition for postconviction relief following an evidentiary hearing, his motion requesting funding for an expert affidavit, and his motion for leave to file additional claims for relief.  We affirm.

## I.    Background

¶ 2    In May 2014, three men met in the parking lot of a bar in Colorado Springs to complete a marijuana sale.  The sellers, David Johnson and Javar Harrison, sat in the front of Johnson's car, while the buyer sat in the back of the car to inspect the drugs.  Harrison was getting out of the car to go inside the bar when he heard the other men disagreeing over the quality of the drugs.  According to Harrison, Johnson told the buyer he didn't have to buy the marijuana if he didn't like the look of it.  The buyer responded, "Well, check this out," pulled a handgun from his pocket, and shot Johnson twice.  Harrison was also hit as he ran away from the car.  According to Harrison, the shooter started toward his own car but then turned back, found Harrison hiding behind another vehicle, and shot him twice more as he tried to crawl away.  The shooter

1

then drove away in a white Audi with distinctive large chrome wheel rims and a temporary license plate tag.

¶ 3 Johnson was struck in the head and chest and died at the scene. Harrison suffered four wounds in his torso and back but survived after being placed in a medically induced coma. At the scene, Harrison told bystanders the shooter was "Johnathan." Later, he identified the shooter as a man he knew as "Smoke." He said he knew "Smoke's" name started with a J but could only think of "Johnathan" at the time of the shooting.

¶ 4 At trial, the prosecution presented testimony by a forensics expert who examined Johnson's car and testified that latent fingerprints matching Forbes's were on the outside handle of the car door the shooter had used. Additionally, cell phone records revealed several calls between Forbes and Johnson in the hours leading up to the shooting, and photos and text messages recovered from Forbes's cell phone linked him to a white Audi with distinctive chrome rims and showed him trying to get rid of the car and the rims following the shooting. The prosecution also presented evidence that after the shooting, Forbes made multiple internet searches regarding the shooting, the effects of medically induced

2

comas on memory, and whether cars can be traced through temporary tags. And cell phone tracking data showed that, at the time surrounding the shooting, two phones associated with Forbes traveled from the general location of his home in Fountain to the general location of the shooting in central Colorado Springs and then (as to one of the phones) back to the general location of his home.

¶ 5     Both Harrison and Forbes testified at trial. Harrison identified Forbes as the shooter and the man he knew as "Smoke." Forbes denied shooting Johnson and Harrison and said he had been with a woman at her house in Colorado Springs on the day of the shooting. Other eyewitnesses also testified, describing the shooter in a way that fit Forbes's description.

¶ 6     A jury convicted Forbes of first degree murder, attempted first degree murder, and first degree assault.

¶ 7     Forbes appealed his conviction, and a division of this court affirmed. *See People v. Forbes*, (Colo. App. No. 15CA0914, Aug. 10, 2017) (not published pursuant to C.A.R. 35(e)).

¶ 8     Forbes then filed a timely petition for postconviction relief and request for appointment of counsel. The postconviction court

3

appointed counsel, who filed a supplement to the petition followed by three additional supplements. In those filings, Forbes claimed that his trial counsel and his direct appeal counsel were ineffective in various ways. The postconviction court held an evidentiary hearing on Forbes's claims and rejected them, making oral findings followed by written findings on the final supplement Forbes's counsel filed after the court's oral findings.

¶ 9 After the court's initial oral ruling, and while the final supplement was pending, Forbes filed a motion requesting funding to present an affidavit from an additional expert, which the court denied. Additionally, Forbes filed a motion for leave to file additional ineffective assistance of counsel claims, which the court also denied.

¶ 10 Forbes now appeals. Because he is self-represented in his appeal, we construe his briefing broadly to ensure that we review all the issues he raises. *See People v. Cali*, 2020 CO 20, ¶ 34.

## II. Ineffective Assistance of Counsel Claims

¶ 11 Forbes challenges the postconviction court's rejection of his ineffective assistance of counsel claims. We first address his claims

regarding his trial counsel and then address those regarding his

direct appeal counsel.[1]

### A.    Ineffective Assistance of Trial Counsel

¶ 12    Forbes argues that trial counsel rendered ineffective

assistance relating to (1) the fingerprint evidence; (2) the compiled

exhibit of his text messages; and (3) a misstatement in the

testimony of the cell phone record custodian.

¶ 13    We first set forth the applicable legal standards and then

address each of these arguments in turn.

### 1.    Applicable Law and Standard of Review

¶ 14    The United States and Colorado Constitutions both guarantee

a criminal defendant a right to the effective assistance of counsel.

U.S. Const. amends. VI, XIV; Colo. Const. art. II, § 16; *People v.*

*Rainey*, 2023 CO 14, ¶ 1.  When evaluating claims of ineffective

assistance of counsel, we apply the two-prong test set forth in

*Strickland v. Washington*, 466 U.S. 668 (1984).  *Ardolino v. People*,

69 P.3d 73, 76 (Colo. 2003); *People v. Long*, 126 P.3d 284, 286

---

[1] Any postconviction claims that Forbes raised in the postconviction
court but did not reassert on appeal have now been abandoned.
*See People v. Osorio*, 170 P.3d 796, 801 (Colo. App. 2007).

(Colo. App. 2005).  To prevail on such a claim, the defendant must show that (1) their counsel's performance was deficient and (2) the deficient performance prejudiced them.  *Strickland*, 466 U.S. at 687.

¶ 15    To establish deficient performance, the defendant must prove that counsel's representation "fell below an objective standard of reasonableness."  *Id.* at 688.  In conducting the reasonableness inquiry, a court must make "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Id.* at 689.  And "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"  *Id.* (citation omitted).

¶ 16    To establish prejudice, the defendant must show that there is a reasonable probability that, absent the errors, the result of the proceeding would have been different.  *Id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*

6

¶ 17     A defendant must make both showings to require reversal of a conviction. *Id.* at 687. Thus, a postconviction court may reject an ineffective assistance of counsel claim if the defendant fails to demonstrate either prong. *People v. Aguilar*, 2012 COA 181, ¶ 9.

¶ 18     We review the denial of a Crim. P. 35(c) petition after a hearing as a mixed question of fact and law. *People v. Corson*, 2016 CO 33, ¶ 25. We defer to the postconviction court's factual findings but review de novo the court's ultimate conclusions on the performance and prejudice prongs. *People v. Sharp*, 2019 COA 133, ¶ 12. The postconviction court determines the weight and credibility to be given to any witness testimony at a Crim. P. 35(c) hearing. *People v. Hardin*, 2016 COA 175, ¶ 39. Accordingly, "[w]here the evidence in the record supports the findings and holding of the postconviction court that presided over an evidentiary hearing, the judgment will not be disturbed on review." *People v. Wardell*, 2020 COA 47, ¶ 27.

### 2.     Fingerprint Evidence

¶ 19     Forbes argues that trial counsel rendered ineffective assistance in addressing the prosecution's fingerprint evidence because she failed to sufficiently challenge (1) police investigators' preservation of the car on which the fingerprints were found; (2) the

documentation of the fingerprints on the car; (3) the limitations of the science of fingerprint examination; and (4) the fingerprint examiner's identification of the fingerprints as Forbes's. We address each argument in turn.

### a.    Preservation of the Car

¶ 20    After Forbes was taken into custody in connection with the shooting, his counsel filed a motion for preservation of physical evidence. On the same day the trial court granted that motion, police investigators conducted an examination of Johnson's car, including lifting latent fingerprints from the car's exterior. After the examination, the car was transported to the police department's outdoor impound lot, rather than keeping it in the covered evidence bay. Forbes claims that storing the car outside allowed for the destruction of any remaining physical evidence on the car's exterior, inhibiting the defense from performing its own testing on the car.

¶ 21    Forbes argues that trial counsel should have more effectively cross-examined prosecution witnesses about the adequacy of the preservation of the car. We decline to consider this argument because Forbes didn't raise it in his Crim. P. 35(c) petition or supplements; thus, it is not preserved. *See People v. Stovall*, 2012

COA 7M, ¶ 3 ("[A]llegations not raised in a Crim. P. 35(c) motion or during the hearing on the motion are not properly preserved and may not be raised for the first time on appeal . . . ." (citing *People v. Goldman,* 923 P.2d 374, 375 (Colo. App. 1996))). Instead, Forbes only made the related argument that trial counsel should have presented expert testimony highlighting investigators' failure to preserve evidence.

¶ 22     We also agree with the postconviction court's rejection of the related argument that was preserved. As the postconviction court noted, counsel addressed issues concerning preservation of the car extensively before and during the trial. Not only did trial counsel file the motion for the preservation of evidence, she also filed a motion for sanctions for the violation of the order for preservation. And when that motion was denied, she filed a petition in the supreme court for relief pursuant to C.A.R. 21, which was also denied. She also cross-examined one of the prosecution's witnesses about the lack of preservation of the car.

¶ 23     Given trial counsel's efforts regarding this issue, we agree with the postconviction court's conclusion that her performance did not fall below an objective standard of reasonableness. *See Strickland,*

466 U.S. at 688-89; *see also Aguilar*, ¶ 12 (trial counsel didn't render ineffective assistance by not hiring an expert but challenging the prosecution's evidence in other ways).

### b. Documentation of the Fingerprints

¶ 24 During the trial, the prosecution called Dan Dilts from the Colorado Springs Police Department's Metro Forensic Crime Laboratory to testify about his collection and examination of the latent fingerprints found on Johnson's car.

¶ 25 Dilts testified that before he collected the latent fingerprints from the car's door handle, he took photos of them. But it was difficult to see the prints on the chrome surface in those photos.

¶ 26 Forbes argues that trial counsel should have called an expert to demonstrate the deficiencies in Dilts's documentation, as the evidence presented was insufficient to document the location where the fingerprints were recovered and Dilts should've used ninhydrin, superglue fumes, omni light, or enhanced digital images to increase the visibility of the fingerprints in the photos.

¶ 27 Again, we agree with the postconviction court's rejection of this argument. While trial counsel didn't call an expert to challenge the documentation of the fingerprints, she did cross-examine Dilts

on his documentation — and specifically on how difficult it is to see any fingerprints on the chrome door handle in the photos. In response to trial counsel's questioning, Dilts explained the challenges associated with photographing latent fingerprints on chrome surfaces.

¶ 28 Under these circumstances, we cannot conclude that trial counsel's efforts fell outside the wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 688-89; *Aguilar*, ¶ 12.

        c.     Limitations of Latent Fingerprint Examination

¶ 29 At trial, Dilts explained that he lifted latent fingerprints from the rear passenger door, which he ran through the Automated Fingerprint Identification System (AFIS). One of the candidates AFIS returned was Forbes, who was by then already a suspect. Dilts conducted a "one-to-one comparison" and concluded that the prints came from Forbes's right index and middle fingers.

¶ 30 The prosecutor asked Dilts about his level of certainty in making a match like this. Dilts responded,

> When you're making a match, you have to understand that you have to basically have *a hundred percent degree of certainty* that

11

you're making a correct identification. There's things that are at stake here, obviously, someone who you're identifying in a crime. That's very important to take that weight. Also, in my career, I put my career on the line every time I make an identification. Because if I make a false identification, I'll never be able to testify again. It will be brought up every time thereafter . . . .

(Emphasis added.)

¶ 31   At the postconviction hearing, Forbes presented evidence — primarily a 2009 National Academy of Sciences report and the testimony of an expert on forensic sciences — suggesting there are limits to the science of latent fingerprint examination. The expert testified that, based on these limits, there is a push for fingerprint examiners to move away from using language like "match" or "hundred percent" certainty while testifying in criminal cases. The expert opined that such terminology is "not scientific" because it can falsely convey that there is no rate of error. The expert also discussed the impact of confirmation bias in fingerprint identification, particularly where the examiner knows who is already suspected to have committed a crime.

¶ 32   Although it's not entirely clear, it appears that Forbes may be reasserting an argument he made below that his trial counsel

12

should've cross-examined Dilts on the limitations of latent fingerprint identification and on confirmation bias and should've contested Dilts's "bolstering" of his own testimony by suggesting he was a hundred percent certain the prints were Forbes's.[2]

¶ 33     But the postconviction court found, with record support, that although Forbes's trial counsel didn't specifically refer to the 2009 National Academy of Sciences report, she did cross-examine Dilts on some of the limitations of the science of fingerprint evidence. Trial counsel further cross-examined Dilts on potential confirmation bias by asking him about the fact that, before he began his analysis, he already knew that Forbes had been identified as a suspect in the case.

¶ 34     Because trial counsel cross-examined Dilts on the science of fingerprint examination generally and on his analysis specifically, we agree with the postconviction court's conclusion that her performance did not fall below an objective standard of

---

[2] Forbes also sought to admit another report from the National Academy of Sciences, released in 2017, as newly discovered evidence. The postconviction court declined to consider that report. Forbes doesn't appear to challenge that ruling on appeal. Thus, the issue has been abandoned. *See Osorio,* 170 P.3d at 801.

reasonableness. *See Strickland*, 466 U.S. at 688-89; *see also Arko v. People*, 183 P.3d 555, 558 (Colo. 2008) (as "captain of the ship," counsel has the final authority to make strategic decisions like determining "whether and how to conduct cross-examination" (first quoting *Steward v. People*, 498 P.2d 933, 934 (Colo. 1972); and then quoting *People v. Curtis*, 681 P.2d 504, 511 (Colo. 1984))).

### d.     Identification of the Fingerprints

¶ 35     Finally, Forbes contests trial counsel's decision not to call an expert to refute Dilts's identification of the fingerprints as Forbes's and counsel's concession in closing arguments that Dilts's identification was accurate.

¶ 36     Trial counsel did consult her own expert on fingerprint evidence, but that expert agreed with Dilts's conclusion. Instead of attempting to establish that the fingerprints in question were not Forbes's, trial counsel focused on highlighting the fact that investigators couldn't definitively establish how or when those prints were deposited, thus calling into question what relevance the prints had in connecting Forbes to the shooting. Because this was a reasonable trial strategy adopted by counsel, we agree with the postconviction court's conclusion that it did not fall outside the

wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 688-89; *Arko*, 183 P.3d at 558; *Aguilar*, ¶ 12.

### 3. Text Messages

¶ 37 At trial, the prosecution admitted, without objection, a 212-page compilation of Forbes's text messages from the days leading up to and following the shooting. The compilation included texts indicating that Forbes was told that investigators were looking for a white Audi in connection with the shooting. It also included texts indicating that almost immediately afterward, Forbes began trying to get rid of an Audi and take the rims off of it.

¶ 38 Forbes contends that trial counsel was ineffective because she failed to object to the admission of some of the text messages in the compilation on relevance and hearsay grounds.

¶ 39 As to the issue of relevance, Forbes asserts that, because some of the texts in the compilation included "sexually explicit content," those texts were irrelevant and prejudicial insofar as the jury might have inferred that he was a "sexually deviant person" and convicted him on that basis. We agree with the postconviction court's determination that some of the texts were "not necessarily relevant." Nonetheless, we also agree with the court's conclusion that failing

15

to object to the inclusion of those texts on relevance grounds isn't so deficient as to fall outside the wide range of reasonable professional assistance. *See Strickland,* 466 U.S. at 688-89.

¶ 40 Turning to the issue of hearsay, Forbes asserts that his trial counsel should have objected to the text message compilation — which was introduced through the testimony of an investigating officer — on the basis that the texts constituted hearsay. But, as the postconviction court pointed out, the texts Forbes had sent were admissible statements of the defendant, and many of the other texts were arguably adopted admissions of the defendant (or provided context for his admissions). *See* CRE 801(d)(2); *People v. Hagos,* 250 P.3d 596, 623 (Colo. App. 2009). Still other texts were not admitted for the truth of the matter asserted and, thus, weren't hearsay at all. *See* CRE 801(c). Therefore, even if trial counsel had objected on the basis of hearsay, most, if not all, of the texts likely would've been admitted anyway. Trial counsel's performance accordingly was not constitutionally deficient. *See Strickland,* 466 U.S. at 688-89; *see also Williams v. Trammell,* 782 F.3d 1184, 1198 (10th Cir. 2015) ("[W]hen a defendant fails to show that a trial court's admission of evidence was improper for some reason, it

likely follows that the lawyer did not perform deficiently by failing to object to its admission."); *Garrett v. United States*, 78 F.3d 1296, 1302 (8th Cir. 1996) ("The performance of an attorney is not deficient because the attorney failed to object to admissible evidence . . . .").

¶ 41 Moreover, even if we were to accept Forbes's argument that his counsel's performance was deficient as to either or both of these objections to the text message evidence, we also agree with the postconviction court's conclusion that any failure to object was not prejudicial. *See Strickland*, 466 U.S. at 694. Forbes doesn't explain how the sexually explicit texts would've made a difference to the jury, particularly given that some of those texts were with the woman he claimed to have been with for a "booty call" at the time of the shooting. He also doesn't explain how any particular texts that might have been considered hearsay damaged his case. And, in any event, there was overwhelming evidence apart from the text messages establishing Forbes's guilt — including, among other things, Harrison's identification of him as the shooter, eyewitnesses who described the shooter as fitting his description, phone records showing multiple calls between him and Harrison before the

shooting, cell phone records showing his location during the shooting, his fingerprints on Johnson's car door handle, his internet search history, and photos showing him in front of a white Audi with distinct chrome rims (a car fitting the description of the car eyewitnesses say the shooter left in).

### 4. Cell Phone Subscriber Information

¶ 42     At trial, a records custodian testified that Forbes was the subscriber for one of the phone numbers the prosecution alleged was connected with Forbes. However, the subscriber for that number was unknown. Forbes contends that his trial counsel failed to object to the custodian's testimony or seek to correct the record — which she indicated she didn't do because she "had the phones confused."

¶ 43     However, the postconviction court found, with record support, that regardless of who was the actual subscriber, all the evidence suggested that Forbes was the user of that phone number during the relevant time period. Indeed, Harrison had the phone number saved in his phone under the name "Smoke," and he testified that he knew Forbes as "Smoke." Moreover, the cell phone data showed that the phone affiliated with that number, along with another

phone owned by Forbes, travelled on the day of the shooting from the vicinity of Forbes's home to the vicinity of the shooting and back again.

¶ 44    Although a defendant has a right to effective representation, that doesn't equate to "a right to an attorney who performs [her] duties 'mistake-free.'" *Weaver v. Massachusetts*, 582 U.S. 286, 300 (2017) (quoting *United States v. Gonzalez-Lopez*, 548 U.S. 140, 147 (2006)).  Given the postconviction court's observation that the weight of the evidence pointed to the phone number being Forbes's, it was likely not obvious to trial counsel that there had been a mistake in the testimony.  For the same reason, the error was not likely to have any prejudicial impact.  And, as noted above, there was substantial evidence supporting Forbes's convictions.  Accordingly, we agree with the postconviction court's rejection of this claim under both *Strickland* prongs.  *See Strickland*, 466 U.S. at 688-89, 694.

### B.    Ineffective Assistance as to Direct Appeal Counsel

¶ 45    Forbes further contends that his direct appeal counsel rendered constitutionally deficient performance by failing to

challenge the admission of the text messages on hearsay and Confrontation Clause grounds.

¶ 46    The same two-pronged *Strickland* test applies to claims of ineffective assistance of appellate counsel.  *Long,* 126 P.3d at 286.

¶ 47    To establish the performance prong, "the defendant must show that counsel failed to present the case effectively" — for example, by "ignor[ing] issues that are clearly stronger than those presented." *Id.*  But "[a]ppellate counsel is not required to raise on appeal every nonfrivolous issue a defendant desires to raise." *People v. Trujillo,* 169 P.3d 235, 238 (Colo. App. 2007).  "'[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome,' even in the context of a direct appeal." *Id.* (alteration in original) (quoting *Ellis v. Hargett,* 302 F.3d 1182, 1189 (10th Cir. 2002)).

¶ 48    To establish the prejudice prong on the basis of a failure to raise specific issues on appeal, the defendant must show that but for counsel's errors, they would have prevailed in the appeal.  *See Long,* 126 P.3d at 286; *Trujillo,* 169 P.3d at 238-39.

¶ 49    Just as the postconviction court did, we conclude, for the same reasons we conclude that Forbes's trial counsel was not

ineffective as it relates to the text messages, that his direct appeal counsel also was not ineffective. Simply stated, even if the texts had been challenged on hearsay or Confrontation Clause grounds, most of them were likely to have been found admissible as statements of a party opponent, adoptive admissions, statements providing context to Forbes's admissions, or nonhearsay. *See* CRE 801(c), (d)(2); *Hagos*, 250 P.3d at 623. And even if some of the messages had been excluded, it wouldn't have made a difference in the outcome of the trial. Therefore, it was reasonable for direct appeal counsel to not have raised the issue on direct appeal. We thus conclude that direct appeal counsel's performance did not fall below an objective standard of reasonableness. *See Strickland*, 466 U.S. at 688-89; *Long*, 126 P.3d at 286; *Trujillo*, 169 P.3d at 238-39.

## C.    Cumulative Error

Forbes asserts that his ineffective assistance of counsel claims rise to the level of cumulative error. "For reversal to occur based on cumulative error, a reviewing court must identify multiple errors that collectively prejudice the substantial rights of the defendant, even if any single error does not." *Howard-Walker v. People*, 2019 CO 69, ¶ 25; *see also People v. Gandiaga*, 70 P.3d 523, 529 (Colo.

21

App. 2002) (applying the same standard when considering the cumulative impact of multiple alleged ineffective assistance of counsel claims).

¶ 51 We have rejected all of Forbes's claims of ineffective assistance of counsel on the basis that he hasn't shown that his trial or appellate counsel rendered constitutionally defective assistance. Because we have not identified any errors — much less multiple errors — we reject Forbes's cumulative error claim.

### III. Request for Funding for Expert Affidavit

¶ 52 Forbes also challenges the postconviction court's denial of his request for funding for an additional expert affidavit. We reject this challenge.

¶ 53 We review the court's order denying Forbes's request for an abuse of discretion. *See People v. Stroud*, 2014 COA 58, ¶ 5. Accordingly, we will not disturb the court's decision unless it is manifestly arbitrary, unreasonable, or unfair or is based on an erroneous understanding or application of the law. *See id.*

¶ 54 Forbes's request — which he filed after the postconviction court had held an evidentiary hearing and issued an oral ruling denying his claims — proposed that an expert would provide an

additional opinion regarding his trial counsel's failure to challenge the prosecution's fingerprint evidence. The request didn't indicate what the new expert would opine.

¶ 55 In denying Forbes's request, the court explained that it had already considered all the testimony and arguments the parties had presented in their pleadings and at the hearing, including testimony from a defense expert, and had already issued an oral ruling disposing of all the claims presented to it up to that point, including those relating to the fingerprint evidence. It then concluded, "The Court does not find it appropriate or necessary to consider any further evidence on these issues in the form of any expert affidavit."

¶ 56 Given that the postconviction court had already denied the underlying claims and that Forbes's request didn't indicate what an additional expert would add to the evidence the court had already considered, we conclude that the court's denial of Forbes's request was not manifestly arbitrary, unreasonable, or unfair or based on an erroneous understanding or application of the law. *See id.* Accordingly, we don't disturb its decision.

IV.    Motion for Leave to File Additional Claims

¶ 57    Lastly, Forbes challenges the postconviction court's order denying his motion for leave to file additional claims. We also reject this challenge.

¶ 58    At the time of the postconviction court's oral ruling rejecting the ineffective assistance of counsel claims Forbes had asserted up to that point, the court indicated that it would allow Forbes's postconviction counsel to file an additional supplement relating to the fingerprint evidence. Counsel filed that supplement less than a week later, and the court denied the supplemental claims in its later written order.

¶ 59    In the interim period when only the final supplement was pending, Forbes filed a pro se motion for leave to file additional claims. In that motion, he attempted to assert additional ineffective assistance of counsel claims regarding the cell phone evidence.

¶ 60    The postconviction court denied the motion, explaining that it had already considered Forbes's "wide-ranging prior claims of ineffective assistance of trial counsel" asserted in his petition and his counsel's supplements and had provided Forbes and his counsel an opportunity to establish the basis for those claims at an

24

evidentiary hearing. The court noted that some of the issues raised in Forbes's motion had already been raised and rejected, while others were new issues that could've been raised in the previous pleadings. Noting that the claims were essentially successive postconviction petitions, the court concluded that it "d[id] not find sufficiently special circumstances to warrant the consideration of these new claims as they are substantially similar and related to claims to [sic] previously raised and resolved."

¶ 61 Forbes doesn't deny that a court must deny a Crim. P. 35(c) claim as successive if the claim was raised, or could have been raised, in a previous postconviction proceeding. *See* Crim. P. 35(c)(3)(VI), (VII); *People v. Taylor*, 2018 COA 175, ¶ 17. Nonetheless, he argues that this provision doesn't apply because his original postconviction proceeding was still under consideration, and not yet final, at the time he requested to file additional claims.

¶ 62 We decline to decide whether the postconviction court properly viewed the motion as a request to file successive claims because we conclude that even if any claims weren't successive, they were untimely. Thus, the court didn't err in denying the motion. *See People v. Duran*, 2025 COA 34, ¶ 26 ("[W]e may affirm the

25

postconviction court's order on any ground supported by the record, whether or not the postconviction court relied on or considered that ground.").

¶ 63 Under Crim. P. 35(c)(3)(V), if a defendant files a pro se Rule 35(c) petition and requests appointed counsel and the court doesn't summarily deny the petition, the court must serve a copy of the petition on the public defender's office and allow it (or, as here, alternate defense counsel) forty-nine days to file any additional claims or seek further time to do so.  After invoking this procedure, the court granted requests by Forbes's postconviction counsel for additional time to investigate and supplement the original petition. Postconviction counsel then filed the initial supplement, and while awaiting a hearing (which was reset a few times), counsel filed two further supplements, which the court accepted.  And, as indicated, the court allowed a final supplement filed shortly after the court's oral ruling based on additional issues that had been raised during the hearing.

¶ 64 The postconviction court did not have to allow any further supplements filed after that time.  And by the time Forbes filed his motion for leave to file additional claims, more than four and a half

years had passed since he filed his initial petition. Accordingly, the court didn't err in denying the motion. *See People v. Marquez*, 2020 COA 169M, ¶ 25 (although "a court may choose to excuse appointed counsel's failure to comply with the forty-nine-day deadline," a court "[i]sn't required to do so . . . where [a motion] was filed *more than two years* after postconviction counsel was appointed").

## V.    Disposition

¶ 65    The orders are affirmed.

JUDGE FREYRE and JUDGE MEIRINK concur.