2014 COA 71

The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Terrence Joe HANKINS, Defendant–
Appellant.

Court of Appeals No. 09CA2208

Colorado Court of Appeals,
Div. I.

Announced June 5, 2014

John W. Suthers, Attorney General, John J. Fuerst, III, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Douglas K. Wilson, Colorado State Public Defender, Lynn Noesner, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by JUDGE NIETO *

¶ 1 Defendant, Terrence Joe Hankins, appeals the judgment of conviction entered upon jury verdicts finding him guilty of first degree murder and abuse of a corpse. We affirm.

## I. Background

¶ 2 In August of 2007, defendant was arrested for the murder of his wife in Craig, Colorado, which is in Moffat County. He was subsequently charged with first degree murder and other crimes. Craig's only daily newspaper, the Craig Daily Press, covered the case, publishing many articles. Defendant moved for a change of venue, citing the number of news articles that had been published. The trial court initially granted the motion. Later, after a remand from the supreme court reversing the suppression of defendant's confession, the court reconsidered and denied the motion.

¶ 3 Ultimately, this case was tried in Moffat County and the defendant was convicted of first degree murder and abuse of a corpse. All other charges were dismissed.

¶ 4 This appeal followed.

## II. Venue

¶ 5 Defendant contends that the trial court's denial of his motion for a change of venue violated his right to a fair trial. We disagree.

### A. Standard of Review

¶ 6 We review a trial court's decision to grant or deny a change of venue for an abuse of discretion. *People v. Harlan,* 8 P.3d 448, 468 (Colo.2000), *overruled on other grounds by People v. Miller,* 113 P.3d 743, 748 (Colo. 2005); *see also* Crim. P. 21(a)(1) ("The place of trial may be changed when the court in its sound discretion determines that a fair or expeditious trial cannot take place in the county or district in which the trial is pending.").

### B. Relevant Facts

¶ 7 In his motion for change of venue, defendant documented twenty-four locally published articles on his case, some of which mentioned his confession to the killing, dismemberment of the victim's body, and other charges that were severed for a separate trial. Based on this publicity, defendant asserted that he could not receive a fair trial in Moffat County.

¶ 8 The court agreed with defendant and ordered a change of venue. The court's decision was based primarily on the newspaper's

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24-51-1105, C.R.S. 2013.

publication of defendant's confessions, which the court had suppressed.

¶ 9 Subsequently, the prosecution challenged the trial court's suppression ruling in an interlocutory appeal. The supreme court reversed the suppression ruling, which prompted the prosecution to move for reconsideration of the order to change venue. The trial court granted the prosecution's motion and returned venue to Moffat County.

## C. Analysis

¶ 10 A trial court must strike the proper balance between the right to trial by a panel of impartial jurors and the right of the public and press under the First Amendment. *People v. Botham*, 629 P.2d 589, 596 (Colo.1981), *superseded on other grounds as recognized in People v. Rath*, 44 P.3d 1033, 1039 (Colo.2002). Pretrial publicity sometimes may prevent a defendant from selecting impartial jurors, and to avoid such prejudice the court may order a change of venue. *Id.* However, "pretrial publicity does not alone trigger a due process entitlement to a change of venue. Rather, we will presume prejudice only in extreme circumstances." *Harlan*, 8 P.3d at 469. "Only when the publicity is so ubiquitous and vituperative that most jurors ... could not ignore its influence is a change of venue required before voir dire examination." *People v. McCrary*, 190 Colo. 538, 545, 549 P.2d 1320, 1326 (1976).

¶ 11 To support a request for a change of venue, a defendant must establish one of two circumstances. *Botham*, 629 P.2d at 597. First, the defendant can show that pretrial publicity is so "massive, pervasive and prejudicial as to create a presumption that the defendant [will be denied] a fair trial." *People v. Bartowsheski*, 661 P.2d 235, 240 (Colo.1983). Alternatively, the defendant can demonstrate that any publicity will create actual prejudice and hostility in the jury panel. *Id.*

### 1 Presumed Prejudice

¶ 12 To determine whether pretrial publicity was so massive, pervasive, and prejudicial as to create a presumption of public bias, courts examine the following factors: "the size and type of the locale, the reputation of the victim, the revealed sources of the news stories, the specificity of the accounts of certain facts, the volume and intensity of the coverage, the extent of comment by the news reports on the facts of the case, the manner of presentation, the proximity to the time of trial, and the publication of highly incriminating facts not admissible at trial." *McCrary*, 190 Colo. at 545, 549 P.2d at 1326.

¶ 13 These factors must establish that publicity is so "ubiquitous and vituperative that most jurors in the community could not ignore its influence." *Harlan*, 8 P.3d at 469. This is a stringent standard, and it is difficult to meet. *See People v. Munsey*, 232 P.3d 113, 121–23 (Colo.App. 2009) (denial of the motion for change of venue was proper even though the media published approximately ninety articles, of which several appeared on the front page while others contained highly inflammatory facts and commentary such as a political cartoon that suggested the defendant be hanged); *see also Harlan*, 8 P.3d at 470 (holding that the trial court properly exercised its discretion to deny a change of venue even though there was an extensive amount of publicity about an extremely heinous offense); *McCrary*, 190 Colo. at 542, 549 P.2d at 1323 (upholding the court's denial of change of venue where news articles indicated the defendant may have been connected to twenty-two murders across the country); *Bartowsheski*, 661 P.2d at 240–41 (concluding that although numerous, the articles were neither sensational nor inflammatory).

¶ 14 The difficulty in meeting this stringent standard is best illustrated by *Botham*, 629 P.2d at 597. There, seventy percent of the county's residents subscribed to its only daily newspaper, which had published a hundred articles on the case involving four murders. *Id.* Throughout the pendency of the case, the newspaper extensively reported the arrest, details about the ongoing investigation, gruesome descriptions of the corpses, and comments about the relief in the community after the arrest of the defendant. *Id.* at 596. Despite these facts, the supreme court

concluded that pretrial publicity was not so massive, pervasive, and prejudicial that the denial of a fair trial could be presumed. *Id.* at 597.

¶ 15 After reviewing the news articles here, we conclude the trial court did not abuse its discretion when it denied defendant's motion. As shown by the record, the pretrial publicity in this case was extensive but not so massive, pervasive, and prejudicial as to create a presumption that defendant was denied a fair trial. Although the crime occurred in a small town of 8500 people, the newspaper published only thirty-five articles in two years as opposed to a hundred in *Botham,* and none of the articles were published during the two-month period before trial. The trial court did not find that the articles were written in an inflammatory or sensational manner, and our review of the articles confirms that they were not so written. Several were merely part of articles about other unrelated cases or part of a review of events occurring during the year. They did not have the vituperative quality that would tend to inflame the passions of the community.

¶ 16 Prejudice exists only in rare and extreme circumstances. *See United States v. McVeigh,* 153 F.3d 1166, 1181 (10th Cir. 1998); *see also Sheppard v. Maxwell,* 384 U.S. 333, 355, 358, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966) ("bedlam reigned at the courthouse during the trial and newsmen took over practically the entire courtroom"; calling the court a "carnival atmosphere"); *Rideau v. Louisiana,* 373 U.S. 723, 726, 83 S.Ct. 1417, 10 L.Ed.2d 663 (1963) (describing the trial as "kangaroo court proceedings").

¶ 17 Because this case does not involve an extreme situation like those where change of venue was warranted, we perceive no basis to presume that defendant was denied a fair trial because of the pretrial publicity.

### 2 Actual Prejudice

¶ 18 In the absence of presumed prejudice, the defendant must show actual prejudice—a nexus between pretrial publicity and a panel of partial jurors. *See Harlan,* 8 P.3d at 470. Courts do not find actual preju-

dice if an extensive voir dire reveals that jurors can set aside their opinions. *Id.* Such a finding satisfies "the constitutional requirement of impartiality." *Id.* (concluding that voir dire revealed that most prospective jurors were critical of the media and that they were willing to set aside their opinions); *see also McVeigh,* 153 F.3d at 1184 (holding that the parties' comprehensive voir dire, including two screening questionnaires, individual questioning by the court, and questioning by both counsel, produced an impartial jury). *But see Irvin v. Dowd,* 366 U.S. 717, 728, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961) (deciding that actual prejudice existed because two-thirds of the final twelve jurors believed that the defendant was guilty); *see also Botham,* 629 P.2d at 600 (finding actual prejudice because approximately half of the jury panel believed the defendant was guilty). We recognize that jurors may have difficulty setting aside their opinions; nevertheless, "we give due deference to jurors' declarations of impartiality and the trial court's credibility determination that those declarations are sincere." *McVeigh,* 153 F.3d at 1181.

¶ 19 Here, the record does not show actual prejudice. Only one impaneled juror said he had formed an opinion about defendant's guilt, and he adamantly declared that he could set it aside. The remaining eleven jurors said they had not formed an opinion as to defendant's guilt. Because defendant did not establish a nexus between pretrial publicity and the jury that decided the case, we conclude the trial court did not abuse its discretion when it denied the motion for change of venue.

### III. Peremptory Challenges

¶ 20 Defendant also seeks reversal of his conviction because he did not receive the full number of peremptory challenges permitted by law. The People concede and we agree that the trial court did not allow each party two additional peremptory challenges when the court seated two alternate jurors. However, defendant did not raise this issue in the trial court, and therefore, we review for plain error.

## A. Standard of Review

¶ 21 It has long been the general rule that we will not review matters that are not preserved in the trial court. *Baker v. People*, 168 Colo. 11, 15–16, 449 P.2d 815, 817 (1969). The exception to the general rule is plain error review. *People v. Villarreal*, 131 P.3d 1119, 1124 (Colo.App.2005). Under this standard, the error must be both obvious and substantial, and must so undermine the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. *See Miller*, 113 P.3d at 750.

¶ 22 Here, there is no indication that the trial court addressed and misinterpreted the laws pertaining to additional peremptory challenges when alternate jurors are seated. Since the record is completely silent on this issue, it appears that the trial court and the attorneys simply overlooked this issue. The parties have not asserted that this error was the result of bad faith. The record does not show or even suggest bad faith by the trial court or either party.

## B. Relevant Facts

¶ 23 Before voir dire, the trial court proposed seating two alternate jurors and also indicated that each side would have ten peremptory challenges. Defendant raised no objection. In explaining how peremptory challenges would be exercised, the court stated that a total of twenty challenges could be exercised. Again, defendant did not object. The parties expended all twenty peremptory challenges.

## C. Analysis

¶ 24 Section 16–10–104, C.R.S.2013, entitles a defendant to ten peremptory challenges in a first degree murder case. When alternate jurors are impaneled, the defendant is entitled to one additional peremptory challenge for each alternate juror. *See* § 13–71–142, C.R.S.2013; § 16–10–105, C.R.S.2013; Crim. P. 24(e). Therefore, each side here was entitled to twelve peremptory challenges.

¶ 25 The resolution of this issue is governed by *People v. Novotny*, 2014 CO 18, 320 P.3d 1194, and *People v. Alfaro*, 2014 CO 19, 320 P.3d 1191, both decided March 17, 2014. These cases overrule *People v. Lefebre*, 5 P.3d 295 (Colo.2000), and *People v. Macrander*, 828 P.2d 234 (Colo.1992).

¶ 26 In *Novotny*, the supreme court held that "allowing a defendant fewer peremptory challenges than authorized, or than available to and exercised by the prosecution, does not, in and of itself, amount to structural error." *Novotny*, ¶ 2. Rather, such an error, in the absence of an express legislative mandate, is subject to "an appropriate case specific, outcome-determinative analysis." *Id.* An outcome-determinative analysis requires "evaluating the likelihood that the outcome of the proceedings in question [was] affected by the error." *Id.* at ¶ 20. Both harmless error and plain error analyses are outcome-determinative. *Id.*; *Alfaro*, ¶ 8.

¶ 27 Thus, we conclude that the error in denying defendant two additional peremptory challenges was obvious and substantial, but where the prosecutor was also so deprived, and where neither the court nor the parties acted in bad faith, the error did not prejudice defendant's substantial right so as to cast serious doubt on the reliability of his conviction. *See Miller*, 113 P.3d at 750. As mentioned above, defendant did not object to having only ten peremptory challenges and did not request additional challenges. Both parties received the same number of challenges; thus, they equally controlled the composition of the jury.

¶ 28 The purpose of peremptory challenges is to secure an impartial jury. *Novotny*, ¶ 22; *People v. Prator*, 856 P.2d 837, 840 (Colo.1993). Thus, the right that we are concerned with here is the right to be tried by a fair and impartial jury. That right was not infringed because our review of the record shows that the case was tried by impartial jurors. "When the jury that actually sits is impartial ... the defendant has enjoyed the substantial right." *United States v. Patterson*, 215 F.3d 776, 782 (7th Cir.2000), *cert. granted in part and judgment vacated in part on other grounds*, 531 U.S. 1033, 121 S.Ct. 621, 148 L.Ed.2d 531 (2000).

¶ 29 We recognize that two seated jurors, in the jury questionnaires, stated that the defendant was likely guilty based on what they had heard or read about the case. However, those jurors also stated that they had no opinion as to defendant's guilt. During voir dire questioning, they demonstrated that they could be fair and impartial. We also recognize that another juror who served on the panel had formed an opinion as to the defendant's guilt, but he assured the court that he could set aside his opinions. Such jurors are qualified to serve. *See People v. Lefebre*, 5 P.3d 295, 301 (Colo.2000), *overruled on other grounds by Novotny*, ¶ 2 (a juror who expresses bias can serve if he or she agrees to set aside the preconception and decide the case based on the evidence and the instructions); *People v. Drake*, 748 P.2d 1237, 1244 (Colo.1988) (juror who, at the outset, thought the defendant was guilty but who could set that opinion aside was not challengeable for cause); *People v. Blankenship*, 30 P.3d 698, 708 (Colo.App.2000) (not error to deny challenge for cause where juror stated on questionnaire that she had formed an opinion about the defendant's guilt based on media information but upon questioning agreed to base her verdict on the evidence).[1]

¶ 30 This standard, the ability to set aside an opinion, has been applied in other contexts where jurors have agreed to set aside prior opinions. *People v. Richardson*, 2014 COA 50, ¶ 43, 350 P.3d 905 (challenge for cause properly denied where juror was concerned about her ability to be fair and impartial but agreed to apply appropriate legal principles and decide case based on the evidence); *People v. LePage*, —— P.3d ——, ——, 2011 WL 544019 (Colo.App. No. 09CA0676, Feb. 17, 2011) (challenge for cause properly denied where juror expressed concern regarding the defendant's right not to testify but agreed to follow court's instruction in that regard).

¶ 31 Defendant cites out-of-state authorities and urges us to adopt a test that finds reversible error if a defendant is wrongly denied a peremptory challenge and a juror that he or she finds undesirable or objectionable serves on the jury. *See, e.g., Busby v. State*, 894 So.2d 88, 96–97 (Fla.2004); *State v. Ross*, 269 Conn. 213, 849 A.2d 648 (2004); *Hanson v. State*, 72 P.3d 40 (Okla.App.2003); *Johnson v. State*, 43 S.W.3d 1 (Tex.Crim. App.2001). We decline to do this.

¶ 32 *Alfaro* directs us to apply the outcome-determinative plain error analysis to the circumstances here. That analysis focuses on the fundamental fairness of the trial. Whether jurors can give a defendant a fair trial can be determined by existing case law, as noted above. We perceive no need to develop a new test that turns on the defendant's subjective determination that a juror is objectionable or undesirable. As noted above, the purpose of peremptory challenges is to secure an impartial jury. If a juror is determined to be legally qualified to serve, without a showing of some other prejudice, that juror's service cannot constitute reversible plain error merely because of a procedural error in the jury selection process.

¶ 33 Moreover, "[t]rial error can rise to the level of plain error only if, at the very least, there is a reasonable possibility that it contributed to the defendant's conviction or sentence." *Alfaro*, ¶ 8. Under this standard, we conclude that the error did not infringe on defendant's right to a fair and impartial jury and did not undermine the reliability of the defendant's conviction, and thus we find no plain error.

## IV. Defendant's Right to Testify

¶ 34 Defendant also asserts that the court interfered with his right to testify by ruling that the prosecution could introduce a 1964 conviction for impeachment purposes if the defendant testified. We decline to consider this contention on direct appeal.

¶ 35 A challenge to a defendant's waiver of the right to testify is not subject to review on direct appeal, but only in a postconviction proceeding. *Moore v. People*, 2014 CO 8, ¶ 3,

---

1. We recognize that defendant did not challenge two of these jurors for cause and thus waived any error in that regard. These jurors are discussed only as to the question of whether the jurors that served were fair and impartial.

318 P.3d 511; *People v. Gibson,* 203 P.3d 571, 574 (Colo.App.2008).

### V.  Conclusion

¶ 36 The judgment is affirmed.

JUDGE LICHTENSTEIN and JUDGE MILLER concur.