23CA0860 Peo v Montoya 06-04-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA0860
Alamosa County District Court No. 22CR5011
Honorable Kim Cortez-Rodriguez, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Gilberto Andres Montoya,

Defendant-Appellant.

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS

Division V
Opinion by JUDGE LIPINSKY
Yun and Schutz, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced June 4, 2026

Philip J. Weiser, Attorney General, Patrick A. Withers, Assistant Solicitor General and Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Julieanne Farchione, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Gilberto Andres Montoya appeals his convictions for first degree burglary, second degree burglary, and menacing with a deadly weapon. We reverse his conviction for first degree burglary but otherwise affirm the judgment.

## I.    Background

¶ 2     A jury could have reasonably found the following facts from the evidence introduced at trial.

¶ 3     One night, when a family, including a married couple (the victims), returned home, they discovered that their front door was open and that someone had entered the rental house where they lived. The wife found Montoya, whom she recognized as the landlord's son, behind the house. She confronted Montoya, who grabbed a steak knife and held it up to her. Montoya remained behind the house, where he was arrested.

¶ 4     The victims smelled gasoline throughout the house. They also discovered that the house had been "trashed" — an intruder had strewn dishes and clothes everywhere, broken the hot water heater, unplugged appliances, opened windows, and torn off closet doors.

¶ 5     Montoya was charged with first degree burglary, a class 3 felony; second degree burglary, a class 3 felony; and menacing with

a deadly weapon, a class 5 felony. The jury convicted Montoya as charged.

¶ 6 On appeal, Montoya contends that the trial court erred by (1) violating his statutory and constitutional speedy trial rights; (2) failing to instruct the jury that first degree trespass is a lesser included offense of first and second degree burglary; (3) not merging his convictions for second degree burglary and menacing into his conviction for first degree burglary; (4) denying his requests for certain state-paid support services; and (5) rejecting his requests for a change of venue.

## II.    Analysis

### A.    Montoya's Speedy Trial Rights

¶ 7 Montoya contends that the trial court violated his statutory and constitutional rights to a speedy trial. We disagree.

¶ 8 Because a defendant's constitutional and statutory speedy trial rights are different, we analyze those rights separately. *See People v. Harris*, 914 P.2d 425, 430 (Colo. App. 1995) ("The constitutional right to a speedy trial, derived from the Sixth Amendment and from Colo. Const. art. II, § 16, is distinct from the

statutory speedy trial right and the determination as to one does not necessarily dispose of the other.").

### 1. The Trial Court Did Not Violate Montoya's Statutory Speedy Trial Right

#### a. Standard of Review

¶ 9 We "review the [trial] court's findings of fact for clear error, disregarding them only if the record is devoid of support." *People v. West*, 2019 COA 131, ¶ 7, 461 P.3d 591, 596. However, we "review de novo the trial court's interpretation of Colorado's speedy trial statute." *Id.*

#### b. Montoya Was Tried Within the Statutory Speedy Trial Period

¶ 10 Montoya argues that his statutory speedy trial right was violated because he was brought to trial after the statutory deadline, calculated from the date of his preliminary hearing conducted in county court. We disagree.

¶ 11 A defendant must be brought to trial "within six months from the date of the entry of a plea of not guilty." § 18-1-405(1), C.R.S. 2025. If trial does not begin within that period, the charges must be dismissed with prejudice. *Id.* For purposes of the statute, a "month" is calculated by counting forward to the "same numerical

day in the concluding month as the day of the month from which the computation is begun." § 2-4-108(3), C.R.S. 2025; *see West,* ¶ 15, 461 P.3d at 597 (applying section 2-4-108 to calculate the statutory speedy trial period).

¶ 12    In felony cases, a defendant must enter a plea in district court. *See* Colo. Const. art. VI, § 9(1) ("The district courts shall be trial courts of record with general jurisdiction, and shall have original jurisdiction in all civil, probate, and criminal cases . . . ."). In contrast, the county courts lack jurisdiction over felony prosecutions. Colo. Const. art. VI, § 17 ("County courts shall have such civil, criminal, and appellate jurisdiction as may be provided by law, provided such courts shall not have jurisdiction of felonies . . . .").

¶ 13    Montoya entered a plea of not guilty at his arraignment in district court on August 16, 2022. Calculating six months from that date yields a speedy trial deadline of February 16, 2023. *See* § 2-4-108(3). Montoya's trial began on February 13, 2023 — three days before the expiration of that deadline. Accordingly, the trial court did not violate Montoya's statutory speedy trial right. *See* § 18-1-405(1).

4

¶ 14    Nonetheless, Montoya argues that the speedy trial period did not begin on August 16 but, rather, on July 21, 2022, when he announced at a preliminary hearing conducted in county court that he wanted to plead not guilty. For the reasons noted above, however, the county court lacked jurisdiction to accept Montoya's plea to the felony charges. *See* Colo. Const. art. VI, § 17; *see also* § 13-6-106, C.R.S. 2025 (outlining county courts' limited jurisdiction).

¶ 15    At the preliminary hearing, the county court explained that its role was limited to determining whether there was probable cause for the felony counts against Montoya. If probable cause existed, the court continued, it would "bind [the case] over to the [d]istrict [c]ourt as quickly as" it could. At the conclusion of the hearing, the county court found probable cause for the case to be bound over, and all further proceedings in the matter were conducted in district court.

¶ 16    Accordingly, Montoya's attempt to plead not guilty at the preliminary hearing in county court had no legal effect. *See People v. Jachnik,* 116 P.3d 1276, 1277 (Colo. App. 2005) ("[A]bsent a valid appointment order, a county court judge lacks jurisdiction to act as

5

a district court judge and preside over any stage of a felony trial. Thus, a verdict reached under such circumstances is void.").

¶ 17 Montoya argues that, even if his attempted plea was "irregular[]," it still triggered his statutory speedy trial right under *Harrington v. District Court*, 559 P.2d 225, 227 (Colo. 1977). We disagree.

¶ 18 In *Harrington*, the supreme court concluded that the defendant's written not guilty plea, entered through counsel, was "not in accordance with the statutes and court rules of procedures." *Id.* Nevertheless, the court held that the plea was effective to commence the statutory speedy trial period for two reasons. *See id.* First, the trial court and the parties had "affirmatively proceeded on the basis that a plea of not guilty had been entered." *Id.* Second, because arraignment procedures are designed to protect defendants, a defendant may "waive any technical irregularity in the proceeding" so long as none of his substantial rights are affected. *Id.*

¶ 19 Montoya's reliance on *Harrington* is misplaced.

¶ 20 Unlike in *Harrington*, the county court explicitly told Montoya that it lacked authority to receive his plea, stating that its role was

6

limited to conducting the preliminary hearing in his case. At Montoya's arraignment on August 16, 2022, the district court reaffirmed the county court's statements by telling Montoya that he could not enter his plea in county court. The district court explained that only a district court can accept the defendant's plea in a felony case. Further, at his next appearance in the district court, Montoya confirmed that he had entered his not guilty plea on August 16.

¶ 21    Therefore, unlike in *Harrington*, neither the courts nor the parties in this case "affirmatively proceeded on the basis that a plea of not guilty had been entered" at the county court preliminary hearing or otherwise presumed Montoya had pleaded not guilty before August 16. *Id.*

¶ 22    In addition, *Harrington* dealt with procedural irregularities — not jurisdictional defects — under the criminal rules. The defendant in that case was charged with driving under the influence — a class 1 traffic misdemeanor — and not a felony. *See id.* at 226-27. The parties in *Harrington* did not contest the county court's jurisdiction over the misdemeanor charge. Rather, the only defect that the supreme court identified in *Harrington* was a

7

procedural irregularity under the Colorado Rules of Criminal Procedure — defense counsel's submission of his client's written plea, which was "not in accordance with" Crim. P. 10(a) or Crim. P. 11(c). *Id.* at 227.

¶ 23    The procedural defect in *Harrington* was materially different from the jurisdictional defect in this case, when the county court lacked authority to accept Montoya's felony plea. *See* Colo. Const. art. VI, § 17. Moreover, unlike the procedural protections identified in *Harrington*, parties "cannot consent to or waive jurisdiction when a court does not have jurisdiction." *People in Interest of D.S.*, 2012 COA 199, ¶ 7, 292 P.3d 1210, 1212. Accordingly, Montoya's attempted plea in county court on July 21 had no legal effect.

¶ 24    Montoya also presents an alternative argument: that the speedy trial period began to run on August 2 — the date of his first appearance in district court. The district court continued Montoya's first appearance date because it conducted the August 2 proceeding via Webex, and Montoya asserted his right to appear in person.

¶ 25    This argument runs afoul of the plain language of the speedy trial statute, which specifies that the six-month speedy trial period

begins to run "from the date of *the entry of a plea of not guilty.*"
§ 18-1-405(1) (emphasis added). Montoya relies on inapposite rules
and on section 18-1-1001(2), C.R.S. 2025 — a protection order
statute — to assert that a defendant's first appearance is equivalent
to an arraignment at which the defendant pleads not guilty. We
decline Montoya's invitation to rewrite section 18-1-405(1). *See*
*McBride v. People*, 2022 CO 30, ¶ 27, 511 P.3d 613, 618 ("We must
apply our statute as written, and we may not add words to it.").

¶ 26     In sum, Montoya's speedy trial period began on August 16,
2022, when he entered a not guilty plea in district court. Because
Montoya's trial commenced within six months of that date, the trial
court did not violate his statutory speedy trial right.

### 2.     The Trial Court Did Not Violate Montoya's Constitutional Speedy Trial Right

#### a.     Standard of Review

¶ 27     We review de novo a trial court's decision on whether a
defendant was deprived of his constitutional speedy trial right.
*People v. Glaser*, 250 P.3d 632, 636 (Colo. App. 2010).

b. The Length of the Delay in Montoya's Trial Was Not Presumptively Prejudicial

¶ 28    Montoya contends that the trial court violated his constitutional right to a speedy trial. We disagree.

¶ 29    As noted, both the United States and Colorado constitutions guarantee the right to a speedy trial. *Id.* at 635. "[T]he defendant has the burden of proving that his constitutional speedy trial right has been denied." *Id.* (quoting *People v. Small*, 631 P.2d 148, 154 (Colo. 1981)).

¶ 30    In evaluating a defendant's constitutional speedy trial claim, "[t]here is no established time period that automatically constitutes undue delay." *Id.* Instead, "[t]he determination of such a claim is measured by an ad hoc balancing of four factors" — known as the *Barker* factors — "the length of the delay, the reasons for the delay, the defendant's assertion or demand for a speedy trial, and prejudice to the defendant." *Id.*; *see Barker v. Wingo*, 407 U.S. 514, 530 (1972).

¶ 31    No single *Barker* factor is dispositive. *See Glaser*, 250 P.3d at 636. However, if the length of the delay is not "presumptively prejudicial" under the first *Barker* factor, no further analysis is

10

necessary. *People v. Sandoval-Candelaria*, 2014 CO 21, ¶ 39, 321 P.3d 487, 493. A delay generally becomes "presumptively prejudicial" when the time between charging or arrest and trial approaches one year. *Id.* at ¶ 36, 321 P.3d at 493.

¶ 32 Montoya's trial began on February 13, 2023, eight months and three days after his arrest on June 10, 2022.

¶ 33 An eight-month delay is less than the one-year period that marks a presumptively prejudicial delay. *See People v. O'Neill*, 523 P.2d 123, 125 (Colo. 1974) (holding that there was no constitutional speedy trial violation arising from a ten-month delay because the defendant failed to show that his trial was not held "within a period of time consistent with the court's trial docket"); *West*, ¶ 14, 461 P.3d at 596-97 ("[T]he constitutional right attached at the time of [the defendant's] arrest, which was eight months and six days before the first day of trial. . . . Accordingly, we conclude that the delay here did not prejudice [the defendant] and thus we need not consider the remaining factors." (citations omitted)). Because the delay in Montoya's case did not approach the one-year threshold for presumptive prejudice, Montoya's constitutional claim fails, and we

11

need not analyze the remaining *Barker* factors. *See Sandoval-Candelaria*, ¶ 39, 321 P.3d at 493.

¶ 34    For these reasons, we conclude that Montoya failed to establish that the trial court violated his constitutional speedy trial right.

### B.    The Proposed Instruction that First Degree Trespass Is a Lesser Included Offense of First Degree Burglary

¶ 35    Montoya contends that the trial court erred by denying his request for a jury instruction explaining that first degree trespass is a lesser included offense of first degree burglary. We agree. However, we reject Montoya's unpreserved argument that the court should also have instructed the jury that first degree trespass is a lesser included offense of second degree burglary.

#### 1.    Standard of Review

¶ 36    We review de novo whether one offense is a lesser included offense of another. *People v. Lopez,* 2020 COA 119, ¶¶ 7-8, 471 P.3d 1285, 1287-88.

#### 2.    Additional Facts

¶ 37    During the jury instruction conference, Montoya asked the court for an instruction that first degree trespass is a lesser

included offense of first degree burglary and that second degree trespass is a lesser included offense of second degree burglary. The prosecutor objected to both requests, asserting that, under *People v. Garcia*, 940 P.2d 357, 362 (Colo. 1997), *abrogated by*, *Reyna-Abarca v. People*, 2017 CO 15, 390 P.3d 816, first degree trespass is not a lesser included offense of first (or second) degree burglary. The prosecutor argued that, unlike first and second degree burglary, first degree trespass requires proof of entry into a dwelling.

¶ 38 The trial court concluded that first degree criminal trespass is not a lesser included offense of first degree burglary and declined to give the requested instruction. However, the court agreed with Montoya that second degree trespass is a lesser included offense of second degree burglary and instructed the jury accordingly.

### 3. The Trial Court Erred by Not Instructing the Jury that First Degree Trespass Is a Lesser Included Offense of First or Second Degree Burglary

¶ 39 Montoya argues, the People concede, and we agree, that the court erred by not instructing the jury that first degree trespass is a lesser included offense of first or second degree burglary.

¶ 40   "A person commits the crime of first degree criminal trespass if," as relevant here, such person "[k]nowingly and unlawfully enters or remains in a dwelling of another." § 18-4-502(1)(a), C.R.S. 2025.

¶ 41   A person commits first degree burglary if the person

> knowingly enters unlawfully, or remains unlawfully after a lawful or unlawful entry, in a building or occupied structure with intent to commit therein a crime, other than trespass as defined in this article, against another person or property, and if in effecting entry or while in the building or occupied structure or in immediate flight therefrom, the person or another participant in the crime assaults or menaces any person.

§ 18-4-202(1), C.R.S. 2025.

¶ 42   Finally, a person commits second degree burglary if the person "knowingly breaks an entrance into, enters unlawfully in, or remains unlawfully after a lawful or unlawful entry in a building or occupied structure with intent to commit therein a crime against another person or property." § 18-4-203(1), C.R.S. 2025.

¶ 43   As relevant here, one offense is included within another if it "is established by proof of the same or less than all the facts required to establish the commission of the offense charged," § 18-1-408(5)(a), C.R.S. 2025, or if it "differs from the offense

14

charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest or a lesser kind of culpability suffices to establish its commission," § 18-1-408(5)(c). Under this test, "[a]n offense is a lesser-included offense if at least one of the ways to commit the greater offense necessarily establishes all the elements of the lesser offense." *Whiteaker v. People*, 2024 CO 25, ¶¶ 11, 18, 547 P.3d 1122, 1125-26.

¶ 44 A trial court must give a lesser included offense instruction when "some evidence tend[s] to establish the lesser included offense," *People v. Stafford*, 890 P.2d 244, 248 (Colo. App. 1994), and there is a "rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense," § 18-1-408(6).

¶ 45 "[I]n deciding whether to instruct the jury on a lesser offense requested by the defense, a trial court must consider the evidence in the light most favorable to the defendant." *Lopez*, ¶ 9, 471 P.3d at 1288. "The lesser offense instruction is designed to 'help[] ensure that a jury does not convict a defendant of a greater offense than the one actually committed merely because the greater offense

is the only crime charged.'" *Id.* at ¶ 14, 471 P.3d at 1289 (quoting *People v. Naranjo*, 2017 CO 87, ¶ 16, 401 P.3d 534, 538).

¶ 46    First degree trespass is a lesser included offense of both first degree burglary, *People v. Miller*, 2024 COA 66, ¶¶ 68-69, 556 P.3d 1262, 1273-74, and second degree burglary, *Whiteaker*, ¶ 20, 547 P.3d at 1126-27. (Although we are not bound by the division's decision in *Miller, see Campbell v. People*, 2020 CO 49, ¶ 41, 464 P.3d 759, 767, we agree with the division's reasoning in that case.)

¶ 47    First degree trespass is a lesser included offense of second degree burglary because a person commits the former offense by "[k]nowingly and unlawfully enter[ing] or remain[ing] in a dwelling of another," § 18-4-502(1)(a), and can commit the latter offense by "knowingly break[ing] an entrance into, enter[ing] unlawfully in, or remain[ing] unlawfully after a lawful or unlawful entry in a building or occupied structure," § 18-4-203(1). These elements of second degree burglary also satisfy the elements of first degree trespass. *See Miller*, ¶ 68, 556 P.3d at 1273-74. And first degree trespass is also a lesser included offense of first degree burglary, which likewise requires that the person "knowingly enter[ed] unlawfully, or remain[ed] unlawfully after a lawful or unlawful entry, in a building

16

or occupied structure." § 18-4-202(1); *see Miller*, ¶ 69, 556 P.3d at 1274.

¶ 48    The evidence established that Montoya entered the victims' house knowingly and unlawfully, in violation of the first degree trespass statute.  *See* § 18-4-502(1)(a).

¶ 49    But although Montoya admitted that he entered the victims' house, he denied that he did so with the intent to commit a crime. Rather, he testified that he entered the house only to prevent an explosion after smelling gas fumes while walking by.  This testimony would support Montoya's defense that he lacked the necessary intent to commit burglary.  *See Stafford*, 890 P.2d at 248 (reversing for failure to give a lesser included instruction when the record contained evidence supporting a rational basis to acquit of the greater offense and to convict of the lesser).

¶ 50    Accordingly, the jury could have rationally believed that Montoya did not intend to commit a crime against a person or property when he unlawfully entered the house.  Thus, it could have acquitted him of first or second degree burglary while finding sufficient evidence that he committed first degree trespass.

¶ 51    Because there was a rational basis for the jury to acquit
Montoya of first or second degree burglary, yet to convict him of
first degree trespass, the court erred by declining to instruct the
jury that first degree trespass is a lesser included offense of both
forms of burglary.

4.    The Trial Court's Error in Not Providing an Instruction that
First Degree Trespass Is a Lesser Included Offense of
First Degree Burglary Was Not Harmless

a.    Standard of Reversal

¶ 52    "When a trial court erroneously fails to give a jury instruction
that the defendant requested and to which he was entitled, we
review that omission under the harmless error standard." *Lopez*,
¶ 10, 471 P.3d at 1288.  Under that standard, reversal is only
warranted if "there is 'a reasonable probability that [the error]
contributed to the defendant's conviction.'" *Id.* (quoting
*Mata-Medina v. People*, 71 P.3d 973, 980 (Colo. 2003)).

b.    There Is a Reasonable Probability that the Trial Court's Error
Contributed to Montoya's Conviction

¶ 53    We agree with Montoya there is a reasonable probability that
the court's error in not instructing the jury that first degree

trespass is a lesser included offense of first degree burglary contributed to the jury's verdict.

¶ 54    When "the defendant concede[s] committing the elements of the lesser offense of trespass in h[is] testimony at trial and denie[s] committing the greater offense of burglary on the basis of h[is] subjective intent alone," there is "a reasonable probability the jury would not have found h[im] guilty of burglary had it been permitted to find instead that [he] committed" first degree trespass. *People v. Rock*, 2017 CO 84, ¶ 24, 402 P.3d 472, 480.

¶ 55    Because second degree trespass is a less serious offense than first degree trespass, we cannot infer, as the People argue, that the jury's conviction of Montoya for first degree burglary — but not second degree trespass — renders harmless the trial court's error in not instructing the jury that first degree trespass is a lesser included offense of first degree burglary.  As the supreme court explained, when a court "fails to instruct on an intermediate offense, conviction of a greater offense does not carry the same implicit rejection of lesser offenses." *Mata-Medina*, 71 P.3d at 981. Therefore, the jury's conviction of Montoya for first degree burglary, despite receiving an instruction on second degree criminal trespass,

does not show that the lack of a first degree trespass instruction was harmless.

¶ 56    For this reason, we reverse the judgment of conviction on the first degree burglary charge. *See Lopez*, ¶ 15, 471 P.3d at 1289.

5.    The Trial Court Did Not Plainly Err by Not Instructing the Jury that First Degree Trespass Is a Lesser Included Offense of Second Degree Burglary

a.    Plain Error

¶ 57    Montoya did not ask the court to instruct the jury that first degree trespass is a lesser included offense of second degree burglary. Accordingly, we review for plain error. *See Hagos v. People*, 2012 CO 63, ¶ 14, 288 P.3d 116, 120.

¶ 58    An error is plain if it is "obvious and substantial," *id.*, and it is obvious if it is "so clear-cut" that "a trial judge should be able to avoid it without benefit of objection," *People v. Crabtree*, 2024 CO 40M, ¶ 42, 550 P.3d 656, 667 (quoting *Romero v. People*, 2017 CO 37, ¶ 6, 393 P.3d 973, 976). The defendant bears the burden to establish that an error occurred and that it was both obvious and substantial. *See Kaufman v. People*, 202 P.3d 542, 549 (Colo. 2009).

20

b.     The Error Was Not Obvious

¶ 59     We disagree with Montoya's argument that the trial court plainly erred by not sua sponte instructing the jury that first degree trespass is a lesser included offense of second degree burglary.

¶ 60     Courts presume that the lack of an instruction on a lesser included offense means that the defendant "elected to take his chance on an outright acquittal or conviction of the principal charge." *People v. Romero*, 694 P.2d 1256, 1269 (Colo. 1985).  This presumption is particularly strong in this case because Montoya argued that *second degree trespass*, but not first degree trespass, is a lesser included offense of second degree burglary.  And an error cannot be obvious when the record suggests that the defense may have deliberately pursued that position.  *See People v. Peterson*, 656 P.2d 1301, 1303-04 (Colo. 1983) (explaining that an omission is not plain error when the record shows it was "at least equally likely" the result of the defense's strategy).

¶ 61     Accordingly, the trial court did not obviously err when it did not, on its own initiative, instruct the jury that first degree trespass is a lesser included offense of second degree burglary.  For this

reason, we hold that the court's error not to provide such an instruction was not obvious and, therefore, not plain.

## C. Merger

¶ 62 Montoya argues, and the People concede, that Montoya's second degree burglary and menacing with a deadly weapon convictions merge into his conviction for first degree burglary. Although we reverse Montoya's first degree burglary conviction, we address his merger argument because the issue "may arise on retrial." *Kinney v. People,* 187 P.3d 548, 554 (Colo. 2008).

## 1. Standard of Review

¶ 63 "[A] defendant's double jeopardy rights are violated for failure to merge a lesser included offense into a greater offense . . . ." *Reyna-Abarca,* ¶ 81, 390 P.3d at 828. "[W]e 'review de novo a defendant's claim that a conviction violates the constitutional protection against double jeopardy.'" *Whiteaker,* ¶ 9, 547 P.3d at 1125 (quoting *Garcia v. People,* 2023 CO 41, ¶ 13, 530 P.3d 1200, 1203).

### 2. If Montoya Is Convicted of First Degree Burglary at a New Trial, the Trial Court Must Merge Montoya's Other Convictions with First Degree Burglary

¶ 64    "[S]econd degree burglary of a dwelling is a lesser included offense of . . . first degree burglary." *Armintrout v. People*, 864 P.2d 576, 582 (Colo. 1993).  In addition, a defendant's conviction for menacing merges into a first degree burglary conviction if the latter is predicated on the defendant's unlawful entry into a building or occupied structure with the intent to commit menacing, and, while inside, the defendant menaced any person.  *See People v. Ramirez*, 18 P.3d 822, 825-26, 830 (Colo. App. 2000).

¶ 65    Thus, we agree that, if Montoya is convicted of first degree burglary at a new trial, then his convictions for second degree burglary and menacing with a deadly weapon must merge with the first degree burglary conviction.  *See Armintrout*, 864 P.2d at 582; *Ramirez*, 18 P.3d at 830.

### D. Montoya's Requests for Support Services

#### 1. Standard of Review

¶ 66    "[A] trial court has discretion to grant a motion for support services to a defendant." *People v. Stroud*, 2014 COA 58, ¶ 5, 356 P.3d 903, 906.  "A court abuses its discretion when its decision is

manifestly arbitrary, unreasonable, or unfair, or based on an erroneous understanding or application of the law." *Id.*

¶ 67 "[A] trial court erroneously denies a defendant's request for support services if the defendant shows that the requested services were reasonable, necessary, *and* helpful to the defense." *Id.* (emphasis added).

### 2. The Trial Court Reasonably Provided a Media Player for Montoya's Use

¶ 68 Montoya contends that the trial court erred by denying him access to a media player during his cross-examination of Deputy Austin Reneau, a prosecution witness. Montoya argues that the media player would have allowed him to refresh Deputy Reneau's memory with Officer Jareb Aziz's body camera video, potentially eliciting testimony that the garage door was closed when officers arrived at the victims' house. Such testimony, Montoya argues, would have contradicted the victims' testimony that the garage door was open when the police arrived. We disagree with Montoya's argument.

¶ 69 At the outset, we note that the trial court did not entirely deny Montoya access to a court-provided media player. Montoya asked

24

for a media player in the midst of his cross-examination of Deputy Reneau to play Officer Aziz's body camera video and refresh Deputy Reneau's recollection. In response, a sergeant offered to retrieve a laptop from the jail so Montoya could play the video. Due to time constraints, however, the court declined to allow the sergeant to retrieve the laptop. But the court provided Montoya with a laptop for the completion of his cross-examination of Deputy Reneau after the lunch recess. Thus, the court could only have erred if it was required to provide Montoya with a laptop during the first part of Deputy Reneau's cross-examination.

¶ 70 We agree with the trial court's conclusion that it was unreasonable for Montoya to expect the court to provide a media player on such short notice. Under the circumstances, the trial court did not abuse its discretion by waiting until after the lunch recess to provide Montoya with the laptop he requested. *See id.*

### 3. The Trial Court's Errors in Not Providing Montoya with a Transcript or an Investigator Were Harmless Beyond a Reasonable Doubt

¶ 71 Montoya argues, and the People concede, that the trial court erred by failing to provide Montoya with a transcript of the preliminary hearing (the transcript) and an investigator. Because

Chief Justice Directive 04-04, Appointment of State-Funded Counsel in Criminal Cases and for Contempt of Court, section (V)(D)(1)-(2) (amended Nov. 2014), https://perma.cc/6TF5-4EEF, authorizes trial courts to provide such resources at state expense, we agree with the parties. Therefore, we must address whether the court's decision not to provide these services to Montoya warrants a new trial on all counts.

### a. Standard of Reversal

¶ 72 "Because a court's erroneous denial of a defendant's request for support services is subject to constitutional harmless error review, we reverse a defendant's conviction unless the error is harmless beyond a reasonable doubt." *Stroud*, ¶ 6, 356 P.3d at 907. "In other words, we reverse if 'there is a reasonable *possibility* that the [error] might have contributed to the conviction.'" *Hagos*, ¶ 11, 288 P.3d at 119 (quoting *Chapman v. California*, 386 U.S. 18, 23 (1967)). Conversely, reversal is unwarranted if the record establishes, beyond a reasonable doubt, that the jury's verdict was "surely unattributable to the error." *Griego v. People*, 19 P.3d 1, 9 (Colo. 2001) (quoting *Blecha v. People*, 962 P.2d 931, 942 (Colo. 1998)).

### b. There Is No Reasonable Possibility that Montoya's Lack of the Transcript Might Have Contributed to His Convictions

¶ 73 Montoya contends that he needed the transcript to "impeach portions of [the victims'] trial testimony and to show his consistent assertion that he didn't intend to commit a crime when he entered their house." But the victims did not testify at the preliminary hearing. Therefore, Montoya could not have used the transcript to impeach them. *See State ex rel. Coffman v. Robert J. Hopp & Assocs., LLC*, 2018 COA 69M, ¶ 97, 442 P.3d 986, 1005 ("[I]mpeachment generally refers to proof a witness made [prior] statements inconsistent with his or her present testimony.").

¶ 74 It is unclear whether, by arguing that the transcript would have shown "his consistent assertion that he didn't intend to commit a crime when he entered their house," Montoya contends that he should have been allowed to introduce the transcript into evidence or whether he intended to tie this statement to his impeachment argument.

¶ 75 In any event, even if the transcript were admissible under the Colorado Rules of Evidence, it would not have aided Montoya in identifying or developing evidence of his intent at the time of the

offense. At the preliminary hearing, Officer Aziz testified that Montoya denied that he intended to start a fire when he entered the house. But Montoya did not need the transcript to prove that he made this statement because the court admitted into evidence a bodycam video of Montoya's interaction with Officer Aziz. The bodycam video duplicated Officer Aziz's testimony regarding Montoya's statements. Therefore, the transcript could not have assisted Montoya in rebutting the prosecution's allegations.

¶ 76     Because there is no possibility that the transcript would have helped Montoya persuade the jury, the court's ruling that Montoya was not entitled to the transcript was harmless beyond a reasonable doubt. *See Hagos*, ¶ 11, 288 P.3d at 119.

### c. There Is No Reasonable Possibility that the Trial Court's Decision Not to Provide Montoya with an Investigator Might Have Contributed to His Convictions

¶ 77     Montoya further contends that he required the assistance of an investigator to locate witnesses who could testify that he "wasn't inside the house long enough to cause the damage." But as with the court's denial of Montoya's request for the transcript, its decision not to provide Montoya with an investigator could not have affected the jury's verdict.

28

¶ 78    On the bodycam video, which the jury viewed, Montoya said that he "went through all the rooms" in the victims' house. And Montoya's testimony regarding his actions inside the house corroborated what he told officers at the scene. Therefore, any testimony suggesting that Montoya was in the house for only a brief period of time would have contradicted his own statements and undermined his credibility.

¶ 79    In addition, Montoya's argument relies on the mistaken assumption that causing the damage required a substantial amount of time and that evidence that he was only in the house briefly would establish that he did not engage in criminal mischief — the predicate offense for the burglary charges. To commit criminal mischief, a person need only damage "real or personal property," and the statute sets no minimum length of time for the defendant's actions. § 18-4-501(1), C.R.S. 2025. And the damage to the house, such as wires pulled from a wall, was not particularly time-consuming. Accordingly, evidence that Montoya was only in the house for a brief time would not have materially advanced his argument that he did not commit criminal mischief.

¶ 80   Further, the time required to cause the damage was irrelevant because Montoya admitted to damaging the victims' property. He testified, among other things, that he removed the door from the room where the water heater was located. Montoya also admitted to "shut[ting] down" the boiler and "turn[ing] off" the water heater, which the victims were unable to restart.

¶ 81   Most significantly, the prosecution did not need to prove that Montoya committed criminal mischief to prove that he committed burglary; it needed only to prove that he *intended* to do so. *See* §§ 18-4-202(1), 18-4-203(1). The amount of time Montoya spent in the victims' house was irrelevant to this question of intent. For these reasons, an investigation into the length of time Montoya remained in the victims' house would not have affected the jury's verdict.

¶ 82   In sum, neither the transcript nor the services of an investigator would have supported Montoya's defense. Accordingly, the judgment is "surely unattributable" to the trial court's errors in denying Montoya a transcript and an investigator. *Griego*, 19 P.3d at 9 (quoting *Blecha*, 962 P.2d at 942). Therefore, any such errors

were harmless beyond a reasonable doubt and do not warrant reversal.

### E. Montoya's Requests for a Change of Venue

#### 1. Standard of Review

¶ 83    "We review a trial court's decision to grant or deny a change of venue for an abuse of discretion." *People v. Hankins*, 2014 COA 71, ¶ 6, 361 P.3d 1033, 1035.

#### 2. Montoya Did Not Establish that He Could Not Receive a Fair Trial in Alamosa County

¶ 84    Montoya contends the trial court reversibly erred by denying his requests for a change of venue because of his prior relationships with various prosecutors, law enforcement personnel, and the preliminary hearing judge. We disagree.

¶ 85    A trial's venue should be changed only if the court determines that a "fair or expeditious trial cannot take place in the county or district in which the trial is pending." Crim. P. 21(a)(1); *accord* § 16-6-101(1)(a), C.R.S. 2025. "In the absence of such grounds," a court may not transfer venue. *People v. Reed*, 132 P.3d 347, 351 (Colo. 2006).

¶ 86 But venue must be transferred if pretrial publicity is so "massive, pervasive and prejudicial as to create a presumption that the defendant [will be denied] a fair trial." *Hankins*, ¶ 11, 361 P.3d at 1036 (quoting *People v. Bartowsheski,* 661 P.2d 235, 240 (Colo. 1983)). "Alternatively, the defendant can demonstrate that any publicity will create actual prejudice and hostility in the jury panel." *Id.*; *see Groppi v. Wisconsin,* 400 U.S. 505, 510 (1971) (holding that a change of venue may be required when the community is "permeated with hostility" toward the defendant and other measures cannot ensure an impartial jury). A defendant must support a change of venue claim with "one or more affidavits setting forth the facts upon which [he] relies." Crim. P. 21(a)(2)(I).

¶ 87 First, Montoya failed to submit any affidavits in support of his change of venue requests. Because Montoya did not comply with Crim. P. 21(a)(2)(I)'s affidavit requirement, the trial court acted within its discretion in denying his requests for a change of venue. *See People v. Martinez,* 2015 COA 33, ¶ 28, 350 P.3d 986, 991 (acknowledging, in the jurisdictional context, that a "party's failure to comply with a procedural requirement may justify the court's

dismissal of the action within its discretion" (quoting *SMLL, L.L.C. v. Peak Nat'l Bank,* 111 P.3d 563, 566 (Colo. App. 2005)).

¶ 88  Second, Montoya concedes that there was no pretrial publicity regarding his trial. As a result, he fails to meet the standard for presumed prejudice. *See Hankins,* ¶ 11, 361 P.3d at 1036.

¶ 89  Third, contrary to Montoya's argument, his past associations with various criminal justice officials do not demonstrate that the community was "permeated with hostility" toward him or that the court was incapable of empaneling a fair jury. *Groppi,* 400 U.S. at 510. Indeed, Montoya's allegations do not even establish that the officials he identified were biased against him. In the absence of evidence of bias, the trial court did not abuse its discretion by determining that Montoya could receive a fair trial in Alamosa County.

¶ 90  Thus, the trial court properly denied Montoya's requests for a change of venue.

### III.  Disposition

¶ 91  Montoya's conviction for first degree burglary is reversed. The judgment is otherwise affirmed. On remand, the prosecution may request that the court (1) enter a judgment for second degree

burglary and menacing with a deadly weapon or (2) set a new trial on the first degree burglary count.

JUDGE YUN and JUDGE SCHUTZ concur.